IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

CARLOS SANCHEZ,

                         Plaintiff,           Civil Action No.
                                            9:17-CV-1007 (DNH/DEP)

     v.

M. DEGROTE,[1]

                         Defendant.

_____

APPEARANCES:                       OF COUNSEL:

FOR PLAINTIFF:

CARLOS SANCHEZ, *Pro Se*
05-A-6204
Eastern Correctional Facility
P.O. Box 338
Napanoch, NY 12458

FOR DEFENDANT:

HON. BARBARA D. UNDERWOOD     BRIAN W. MATULA, ESQ.
New York State Attorney General     Assistant Attorney General
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

_____

[1]     Defendant's filings indicate that the proper spelling of defendant's name is "Michael DeGrote" rather than "Degrot," the name under which he was sued. Dkt. Nos. 30, 31; see also Dkt. Nos. 37-1 at 3, n.2. The clerk of the court will respectfully be directed to modify the court's records to reflect this change.

<u>ORDER, REPORT, AND RECOMMENDATION</u>

This is a civil rights action brought by *pro se* plaintiff Carlos Sanchez, a New York State prison inmate, against several corrections employees stationed at the correctional facility in which he was confined at the relevant times. Based upon the filing by plaintiff of an amended complaint and the court's review of that pleading pursuant to 28 U.S.C. §§ 1915(e), 1915A, the sole surviving claims are failure to protect and retaliation against one corrections officer, arising under 42 U.S.C. § 1983.

In response to plaintiff's amended complaint, defendant has moved for dismissal plaintiff's remaining claims based upon his alleged failure to exhaust available administrative remedies prior to commencing suit with the court. For the reasons set forth below, I recommend that defendant's motion be granted.

I.    <u>BACKGROUND</u>[2]

Plaintiff is a prison inmate currently being held in the custody of New York State Department of Corrections and Community Supervision ("DOCCS"). *See generally* <u>Dkt. No. 10</u>. At the time of the occurrences

---

[2]    In light of the procedural posture of the case, the following recitation of facts has been drawn principally from plaintiff's amended complaint, <u>Dkt. No. 10</u>, as well as plaintiff's opposition to the defendants' motion, <u>Dkt. No. 40</u>, to the extent it is consistent with the allegations set forth in his complaint. *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (Hurd, J.).

giving rise to his claims, plaintiff was confined to the Eastern Correctional Facility ("Eastern"), located in Napanoch, New York. Dkt. No. 10.

As narrowed by the court's initial review, plaintiff's complaint alleges that in 2015, he was assaulted by Corrections Officer Michael DeGrote while housed at Eastern. Dkt. No. 10 at 6. Plaintiff was thereafter transferred to another facility because he complained "to Albany" about the assault, but was returned to Eastern on July 6, 2017. *Id.* at 6-7. Upon seeing that plaintiff was back at the facility, DeGrote uttered a homophobic slur directed toward Sanchez and questioned why he had been returned to the facility. *Id.* On July 11, 2017, plaintiff informed prison personnel that he "can't be" at Eastern and requested a transfer; that request, however, was denied. Dkt. No. 10 at 7-8.

On August 30, 2017, plaintiff was assaulted by a fellow inmate in the "yard armory area" of the facility. Dkt. No. 10 at 1, 5, 7-8. Plaintiff claims he was told by the inmate that the assault had been ordered by defendant DeGrote. *Id.* Plaintiff suffered serious injuries during the assault, resulting in a two-day period of outside hospitalization. Dkt. No. 10 at 4. Although plaintiff alleges that he was the victim in the assault, he nonetheless was

disciplined for his involvement in the incident, and received thirty days of "[k]eep [l]ock as a punishment."[3] *Id.* at 1, 5.

## II.    PROCEDURAL HISTORY

Plaintiff's complaint in this action is dated, and the envelope in which it was mailed to the court was postmarked, on September 7, 2017. Dkt. No.1. Submitted together with that complaint was a motion for leave to proceed *in forma pauperis* ("IFP"), which was accompanied by an inmate authorization form. Dkt. Nos. 2, 3. On November 15, 2017, plaintiff filed an amended complaint. Dkt. No. 10.

Following the filing of plaintiff's amended complaint, District Judge David N. Hurd issued a decision and order on March 13, 2018, in which he granted plaintiff's request for IFP status and reviewed the complaint pursuant to 28 U.S.C. §§ 1915(e), 1915A. Dkt. No. 22. In that decision, which significantly narrowed the scope of plaintiff's claims, Judge Hurd

---

[3]    "Keeplock" is a form of confinement through which an "inmate is confined to his cell, deprived of participation in normal prison routine, and denied contact with other inmates." *Gittens v. LeFevre*, 891 F.2d 38, 39 (2d Cir. 1989); *accord*, *Warburton v. Goord*, 14 F. Supp. 2d 289, 293 (W.D.N.Y. 1998); *Tinsley v. Greene*, No. 95-CV-1765, 1997 WL 160124, at *2 n.2 (N.D.N.Y. Mar. 31, 1997) (Pooler, J., *adopting report and recommendation by* Homer, M.J.) (citing *Green v. Bauvi*, 46 F.3d 189, 192 (2d Cir. 1995)). "The most significant difference between keeplock and general population inmates is that the former do not leave their cells for out-of-cell programs unless they are a part of mandatory educational programs and general population inmates spend more time out of their cells on weekends." *Lee v. Coughlin*, 26 F. Supp. 2d 615, 628 (S.D.N.Y. 1998).

identified an Eighth Amendment failure-to-protect claim and a First Amendment retaliation claim against defendant DeGrote as the sole claims plausibly set forth by the plaintiff. *See generally id.*

In lieu of answering, defendant has filed a motion to dismiss plaintiff's amended complaint on the ground that his claims are barred by virtue of his failure to exhaust the administrative remedies available to him before commencing suit. Dkt. No 37. Plaintiff has since responded in opposition to that motion. Dkt. No. 40. Defendant's motion, which is now fully briefed, has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

   A.   Legal Standard Governing Motions to Dismiss Pursuant to Rule 12(b)(6)

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading using a standard that, though unexacting, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, "a pleading

5

must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' " *Iqbal*, 556 U.S. 677-78 (quoting Fed. R. Civ. P. 8(a)(2)). While modest in its requirements, that rule commands that a complaint contain more than mere legal conclusions. *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555-56); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.). The tenet that a court must accept as true all of the allegations contained in a complaint does not apply, however, to legal conclusions. *Iqbal*, 556 U.S. at 678.

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008). As the Second Circuit has observed, "[w]hile *Twombly* does not require

6

heightened fact pleading of specifics, it does require enough facts to 'nudge plaintiffs' claims across the line from conceivable to plausible.' " *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570) (alterations omitted).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant, whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson*, 551 U.S. at 94 (" '[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (citation omitted)); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("[W]hen a plaintiff proceeds *pro se*, a court is obliged to construe his pleadings liberally." (quotation marks and alterations omitted)); *Kaminski v. Comm'r of Oneida Cnty. Dep't of Soc. Servs.*, 804 F. Supp. 2d 100, 104 (N.D.N.Y. 2011) (Hurd, J.) ("A pro se complaint must be read liberally.").

B.    Exhaustion of Administrative Remedies

Defendant contends that plaintiff's claims in this action must be dismissed because, although his complaint is silent on the issue of exhaustion, it is virtually impossible that plaintiff completed the available

7

grievance process before filing the action. Dkt. No. 37-1. According to the defendant, the mere eight-day period that elapsed between the alleged assault and commencement of this action was insufficient to allow plaintiff to file a grievance and see it through the three necessary levels prior to commencement. *Id.* at 7-8. In opposition to the motion, plaintiff does not address the timing argument advanced by defendant, but does intimate that he filed a grievance regarding defendant DeGrote's conduct. Dkt. No. 40 at 1.

## 1.   Legal Standard

The Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). Section 1997e(a)'s exhaustion provision is mandatory and applies to all inmate lawsuits regarding the conditions of their confinement. *Ross*, 136 S. Ct. at 1856; *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Porter v. Nussle*, 534

8

U.S. 516, 524, 532 (2002); *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). In the event a defendant establishes that the inmate-plaintiff failed to fully comply with the administrative process prior to commencing an action in federal court, the plaintiff's complaint is subject to dismissal. *See Woodford*, 548 U.S. at 93 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion."); *see also Wilson v. McKenna*, 661 F. App'x 750, 752 (2d Cir. 2016). "Proper exhaustion" requires a plaintiff to procedurally exhaust his claims by "compl[ying] with the system's critical procedural rules." *Woodford*, 548 U.S. at 95; *accord, Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007).[4]

In New York, the DOCCS has instituted a grievance procedure, designated as the Inmate Grievance Program ("IGP"), for use by prison inmates to lodge complaints regarding the conditions of their confinement. *Williams*, 829 F.3d at 119. The IGP is comprised of three steps that inmates must satisfy when they have a grievance regarding prison conditions. 7 N.Y.C.R.R. §§ 701.1, 701.5; *Williams*, 829 F.3d at 119. The

---

[4]      While placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion "'in a substantive sense,'" an inmate plaintiff nonetheless must meet the procedural requirement of exhausting his available administrative remedies within the appropriate grievance construct in order to satisfy the PLRA. *Macias*, 495 F.3d at 43 (quoting *Johnson v. Testman*, 380 F.3d 691, 697-98 (2d Cir. 2004) (emphasis omitted)).

IGP requires that an inmate first file a grievance with "the clerk" within twenty-one days of the alleged occurrence giving rise to his complaint. 7 N.Y.C.R.R. § 701.5(a)(1). "The complaint may only be filed at the facility where the inmate is housed even if it pertains to another facility." *Id.* Representatives of the inmate grievance resolution committee ("IGRC")[5] have up to sixteen days after the grievance is filed to informally resolve the issue. 7 N.Y.C.R.R. § 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen days after receipt of the grievance. 7 N.Y.C.R.R. § 701.5(b)(2).

A grievant may then appeal the IGRC's decision to the facility's superintendent within seven days after receipt of the committee's written decision. 7 N.Y.C.R.R. § 701.5(c). The superintendent must issue a written decision within a certain number of days after receipt of the grievant's appeal.[6] 7 N.Y.C.R.R. § 701.5(c)(3)(i), (ii).

The third and final step of the IGP involves an appeal to the DOCCS Central Office Review Committee ("CORC"), which must be taken within seven days after an inmate receives the superintendent's written decision.

---

[5]    The IGRC is comprised of "two voting inmates, two voting staff members, and a non- voting chairperson." 7 N.Y.C.R.R. § 701.4(a).

[6]    Depending on the type of matter complained of by the inmate, the superintendent has either seven or twenty days after receipt of the appeal to issue a decision. 7 N.Y.C.R.R. § 701.5(c)(3)(i), (ii).

7 N.Y.C.R.R. § 701.5(d)(1)(i). The CORC is required to render a written decision within thirty days of receipt of the appeal. 7 N.Y.C.R.R. § 701.5(d)(2)(i), (ii).

Where an inmate's grievance complains of employee harassment, the grievance is forwarded directly to the superintendent, bypassing the IGRC review. 7 N.Y.C.R.R. § 701.8(b), (c). The superintendent then has twenty-five days from the date of its receipt to render a decision. 7 N.Y.C.R.R. § 701.8(g). An inmate may appeal the superintendent's decision to the CORC within seven days of its receipt. 7 N.Y.C.R.R. § 701.8(h).

As can be seen, at each step of the IGP process, a decision must be rendered within a specified time period. 7 N.Y.C.R.R. § 701.5. Where the IGRC and/or superintendent do not timely respond, an inmate is permitted to appeal "to the next step." 7 N.Y.C.R.R. § 701.6(g)(2). Generally, if a plaintiff fails to follow each of the required three steps of the above-described IGP prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggerio v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the

merits)." (quotation marks omitted)).

While the PLRA mandates exhaustion of available administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies." (quotation marks omitted)). In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotation marks omitted).

In *Ross*, the Supreme Court identified three circumstances in which a court could find that internal administrative remedies are not available to prisoners under the PLRA.[7] *Ross*, 136 S. Ct. at 1859-60. Under the first, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any

---

[7]    According to the Second Circuit, "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams*, 829 F.3d at 123 n.2.

relief to aggrieved inmates." *Id.* at 1859. In addition, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id*. The Court explained that, "[i]n this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third scenario in which administrative remedies are deemed unavailable to prisoners is when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

Because failure to exhaust is an affirmative defense to a prisoner's civil rights claim, an inmate plaintiff is under no obligation to plead facts demonstrating that he has complied with the PLRA's exhaustion requirement. *Jones v. Bock*, 549 U.S. 199, 211-17 (2007). If, however, such an inmate-plaintiff pleads sufficient facts revealing his failure to exhaust available administrative remedies before commencing suit, his complaint may be dismissed for failure to state a cognizable claim. *Jones*, 549 U.S. at 215-16; *see e.g.*, *Weidman v. Wilcox*, No. 12-CV-6524, 2014 WL 1056416, at *3 (W.D.N.Y. Mar. 17, 2014) (dismissing the plaintiff's complaint because it clearly alleged that the plaintiff failed to avail himself

of the prison grievance procedure).[8]

## 2.    Analysis

Plaintiff's complaint makes no reference to efforts to address his claims against defendant DeGrote through internal channels. Because exhaustion is an affirmative defense, however, he was not obligated to plead facts demonstrating that his claims were fully exhausted prior to commencing this suit. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *see also McNair v. Rivera*, No. 12-CV-6212, 2013 WL 4779033, at *4-*6 (S.D.N.Y. Sept. 6, 2013).

The focus of defendant's argument is the time that elapsed between the underlying conduct and commencement of this action. Dkt. No. 37-1 at 7-9. Plaintiff's claims against defendant DeGrote stem from an alleged assault that occurred at Eastern on August 30, 2017. *See generally* Dkt. No. 10. Pursuant to the prison mailbox rule, plaintiff's complaint in this action is deemed to have been filed on September 7, 2017, the date that it was conveyed to prison officials. *Houston v. Lack*, 487 U.S. 266, 276 (1988); *see also Taylor v. Racette*, 709 F. App'x. 105, 106 n.1 (2018). This action was commenced a mere eight days after the conduct of which

---

[8]    Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

plaintiff complains. *See generally* Dkt. No. 1.  Based on this extremely

narrow timeframe, I conclude that the face of the complaint demonstrates

that plaintiff failed to fully complete the multi-step IGP prior to

commencement, and that his complaint should be dismissed on this basis.

*See, e.g.*, *Cary v. City of New York*, 2018 WL 1581988, *3 (S.D.N.Y. Mar.

27, 2018) (granting a motion to dismiss where it would have been

impossible for the plaintiff to exhaust his administrative remedies between

the July 13, 2017 incident and the August 7, 2017 complaint); *Cohen v.

Welch*, 9:16-CV-593, 2017 WL 3311244, *5-*6 (N.D.N.Y. Jul. 11, 2017)

(Dancks, M.J.) (concluding that plaintiff failed to exhaust his administrative

remedies when the complaint was signed one day following the event

giving rise to the action), *report and recommendation adopted by* 2017 WL

3309713 (N.D.N.Y. Aug. 2, 2017) (Scullin, J.); *Lopez v. Cipolini*, 136 F.

Supp. 3d 570, 581-82 (S.D.N.Y. 2015) (dismissing complaint for the failure

to fully exhaust when the action was commenced ten days after the

incident) ; *Pierre-Louis v. Martinez*, No. 12-CV-2240, 2014 WL 4161960,

*4 (E.D.N.Y. Aug. 18, 2014) ("It is clear from this [three-week] timeline that

Plaintiff could not have exhausted the multi-step IGRP grievance process

in the short time before he filed suit."); *Price v. City of New York*, No. 11-

CV-6170, 2012 WL 3798227, at *3 (S.D.N.Y. Aug. 30, 2012).

Of course, this finding does not end the court's inquiry. Because it is apparent from the face of his complaint that plaintiff failed to complete the IGP process prior to commencement, this leaves one question: whether his failure to exhaust may be excused because relief was "unavailable" to him. *Williams*, 829 F.3d at 123 (quoting *Ross*, 136 S. Ct. at 1858). In his opposition to defendant's motion, plaintiff makes several allegations which plausibly suggest that although he filed a grievance regarding the incident on August 30, 2017, prison administrators, through machination and intimidation, thwarted his efforts to fully take advantage of the grievance of process. *See* Dkt. No. 40 at 1. For example, he claims that the current superintendent of Eastern—the person responsible for the resolution of inmate grievances at the second step—previously assaulted Sanchez in 2008, while he was confined to the Sing Sing Correctional Facility, another DOCCS facility. Dkt. No. 10 at 6, 7. He avers that as a result of this assault, the facility "do[es] not give [plaintiff] assistance." *Id.* at 7. Plaintiff claims that the superintendent is also "try[ing] again [to] set [him] up." *Id.* In addition, plaintiff contends that staff at the facility threatened to keep him confined to keep lock status until he "learn[ed] to stop writ[ing] complaints. *Id.*; *see also id.* at 1.

Even when all inferences are drawn in plaintiff's favor, however,

based upon the facts presently before the court, I am unable to conclude

that plaintiff's failure to exhaust his administrative remedies should be

excused due to unavailability. Whether the IGP would not have been

available to the plaintiff had he filed and attempted to pursue a grievance

to completion does not alter the fact that with or without interference, he

could not possibly have completed the grievance process in the brief time

between the relevant events and filing of this action. I therefore

recommend that plaintiff's amended complaint be dismissed.

C.    Whether to Permit Amendment

Ordinarily, a court should not dismiss a complaint filed by a *pro se*

litigant without granting leave to amend at least once "when a liberal

reading of the complaint gives any indication that a valid claim might be

stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991); *see also*

Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so

requires."); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F. Supp.

986, 1003 (E.D.N.Y.1995) (permitting leave to replead where court could

"not determine that the plaintiffs would not, under any circumstances, be

able to allege a civil RICO conspiracy"). An opportunity to amend is not

required, however, where "the problem with [the plaintiff's] causes of

action is substantive" such that "better pleading will not cure it." *Cuoco v.*

17

*Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

In this case, the deficiencies identified by this report are substantive in nature, and extend beyond the mere sufficiency of plaintiff's amended complaint. Accordingly, because I find that any amendment that might be offered by plaintiff would be futile, I recommend against granting him leave to amend. Even if plaintiff is able to successfully complete the IGP process, granting him leave to amend would be meaningless, since it is well-established that completion of the specified grievance process after an action is commenced does not satisfy an inmate's exhaustion requirement. *Neal v. Goord*, 262 F. 3d 116, 123 (2d Cir. 2001).

IV.   SUMMARY AND RECOMMENDATION

Plaintiff was under no obligation to plead facts demonstrating that he complied with the PLRA's exhaustion requirement before filing this action. Nonetheless, given the exceedingly short amount of time that elapsed between the relevant events and commencement of this action, the face of his complaint reveals that he failed to fully exhaust his administrative remedies prior to commencement and that there is no reason that he should excused from doing so. Accordingly, it is hereby

ORDERED that the clerk of the court is respectfully directed to modify the court's records to change defendant DeGrot's name on the docket to "Michael DeGrote"; and it is further respectfully

RECOMMENDED that the defendants' motion to dismiss (Dkt. No. 37) be GRANTED, and that plaintiff's amended complaint (Dkt. No. 10) be DISMISSED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.[9] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

---

[9]   If you are proceeding *pro se* and are served with this order, report, and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order, report, and

APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:     November 8, 2018
           Syracuse, New York

---

recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

Brown v. Peters, Not Reported in F.Supp. (1997)

1997 WL 599355

Case 9:17-cv-01007-DNH-DEP    Document 56    Filed 11/08/18    Page 21 of 64

1997 WL 599355
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,

v.

Andrew PETERS, Warden, Watertown Correctional
Facility; Joseph Williams, Warden, Lincoln Work–
Release Center; Francis J. Herman, Senior Parole
Officer Interstate Bureau; T. Stanford, Senior Parole
Officer; Deborah Stewart, Parole Officer; John
Doe # 1, Parole Agent, Watertown Correctional
Facility; John Doe # 2, Parole Agent, Lincoln
Work Release Center; Susan Bishop, Director of
Interstate Compact, South Carolina; Cecil Magee,
Parole Officer, South Carolina; Frank Barton,
Parole Officer, South Carolina; John McMahan,
Parole Officer, South Carolina, Defendants.

No. Civ.A. 95CV1641RSPDS.
|
Sept. 22, 1997.

**Attorneys and Law Firms**

Kenneth Brown, State Court Institute–Greene,
Waynesburg, PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General,
The Capitol Albany, NY, for defendants Peters, Herman
Stewart, Doe # 1, Doe # 2, and Williams, Jeffrey M.
Dvorin, Assistant Attorney General, Carl N. Lundberg,
Chief Legal Counsel, South Carolina Department of
Probation, Columbia, SC, for defendants Bishop, Magee,
Barton, McMahan, and Stanford, Carl N. Lundberg, of
Counsel.

DECISION AND ORDER

POOLER, J.

**\*1** The above matter comes to me following a Report–
Recommendation by Magistrate Judge Daniel Scanlon,
Jr., duly filed on April 17, 1997. Following ten days from
the service thereof, the Clerk has sent me the entire file,
including any and all objections filed by the parties herein.

Plaintiff Kenneth Brown commenced this Section 1983
civil rights action on November 17, 1995. On February
12, 1996, Magistrate Judge Scanlon ordered Brown to
submit an amended complaint alleging the specific acts
committed by the individuals named as defendants which
Brown claimed violated his constitutional rights. Brown
filed an amended complaint on March 21, 1996. In
his amended complaint, Brown alleged that defendants
violated his rights under the Eighth and Fourteenth
Amendments by failing to process properly his interstate
compact paperwork, resulting in Brown being imprisoned
pursuant to a parole hold when in fact he had never
violated the conditions of his parole. For a more complete
statement of Brown's claims, see his amended complaint.
Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams made
a motion to dismiss for failure to state a claim pursuant
to Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No. 14, at 2.
On August 19, 1996, defendants Bishop, Magee, Barton,
and McMahan made a motion to dismiss the complaint
against them or, in the alternative, for summary judgment.
Dkt. No. 20. On October 17, 1996, defendants Herman,
Stewart, and Stanford made a motion to dismiss for failure
to state a claim. Dkt. No 34. On April 17, 1996, Magistrate
Judge Scanlon recommended that all defendants' motions
to dismiss be granted and that the complaint be dismissed.
Dkt. No. 50.

On June 9, 1997, Brown filed objections to the magistrate
judge's report-recommendation, having been granted
additional time in which to do so. Dkt. No. 52. In addition,
Brown filed on June 9, 1997, a motion for leave to file a
second amended complaint and a copy of his proposed
amended complaint. Dkt. No. 53. I turn first to the last
motion filed, Brown's motion for leave to amend his
complaint a second time.

Brown seeks to file a second amended complaint "setting
forth in detail the personal involvement of each defendant
and how their acts of commission and omission served to
deprive plaintiff of Constitutionally secured rights." Dkt.
No. 53. The district court has discretion whether to grant
leave to amend. *Ruffolo v. Oppenheimer & Co.,* 987 F.2d
129, 131 (2d Cir.1993). In exercising that discretion, the
court should freely grant leave to amend when justice so
requires. Fed.R.Civ.P. 15(a). However, the court need not
grant leave to amend where it appears that amendment

Case 9:17-cv-01007-DNH-DEP    Document 56    Filed 11/08/18    Page 22 of 64

Brown v. Peters, Not Reported in F.Supp. (1997)

1997 WL 599355

would prove to be unproductive or futile. *Ruffolo,* 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional allegations against the named defendants. However, the additional allegations fail to cure the deficiency which forms the basis of defendants' motion to dismiss—the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987).

**\*2** Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." *Smiley v. Davis,* 1988 WL 78306, \*2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment

would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a *de novo* determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint; (5) the standard of review for a Fed.R.Civ.P. 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. *See Camardo v. General Motors Hourly–Rate Employees Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); *Chambrier v. Leonardo,* 1991 WL 44838, \*1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); *Schoolfield v. Dep't of Correction,* 1994 WL 119740, \*2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-

Brown v. Peters, Not Reported in F.Supp. (1997)
Case 9:17-cv-01007-DNH-DEP    Document 56    Filed 11/08/18    Page 23 of 64
1997 WL 599355

recommendation); *Vargas v. Keane,* 1994 WL 693885, *1 (S.D.N.Y.)* (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also Scipio v. Keane,* 1997 WL 375601, *1 (1997)* (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P. 72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation").

**\*3** Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous. [1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

**ORDER and REPORT–RECOMMENDATION**

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three

motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim.*

BACKGROUND

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1–2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

**\*4** Plaintiff, meanwhile, asked Reid whether any officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from

Case 9:17-cv-01007-DNH-DEP    Document 56    Filed 11/08/18    Page 24 of 64

Brown v. Peters, Not Reported in F.Supp. (1997)

1997 WL 599355

a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5–7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams, the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992, upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days that he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8–10.

In February, 1993, plaintiff was arrested on robbery charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11–14; Exs. C–J.

*5 Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15–17; Exs. F–I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. *See* LaBounty v. Adler, 933 F.2d 121, 122 (2d Cir.1991) (citing Ortiz v. Cornette, 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the necessary legal elements to state a claim under the law. *See* Christopher v. Laidlaw Transit, Inc. 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing Ricciuti v. New York City Transit Authority, 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing

Brown v. Peters, Not Reported in F.Supp. (1997)

1997 WL 599355

that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987).

**\*6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under Rule 12(b)(6), *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dimiss should be granted.

B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable § 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate

deliberate indifference; mere negligence will not suffice. *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

C. Motion to Dismiss by Herman, Stewart and Stanford. Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under § 1983. *Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly constitutionally infirm conduct of his subordinates, he cannot be held liable under § 1983. *Gill,* 824 F.2d at 196.

**\*7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

D. Plaintiff's "John Doe" Claims.

In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.

E. Discovery Motions.

Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery

**Brown v. Peters, Not Reported in F.Supp. (1997)**

1997 WL 599355

motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

## CONCLUSION

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir.1993)* (citing *Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir.1989)*)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

**All Citations**

Not Reported in F.Supp., 1997 WL 599355

Footnotes

1    I note, however, that the report-recommendation would survive even *de novo* review.

**End of Document**                                                                                          © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 1581988
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Joseph CARY, Plaintiff,
v.
CITY OF NEW YORK, et al., Defendants.

17 Civ. 6443
|
Signed 03/27/2018

**Attorneys and Law Firms**

JOSEPH L. CARY, 17R2602, Ulster Correctional Facility, P.O. Box. 800, Napanoch, NY 12458, pro se.

ZACHARY W. CARTER, Corporation Counsel of the City of New York, 100 Church Street, New York, NY 10007, By: Christopher Ferreira, Esq., Attorneys for Defendants.

OPINION

ROBERT W. SWEET, U.S.D.J.

**\*1** Defendant the City of New York (the "City" or the "Defendant"), on its behalf and on behalf of Jane Doe and John Doe, has moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the *pro se* complaint (the "Complaint") of plaintiff Joseph Cary ("Cary" or the "Plaintiff"), in which the Plaintiff alleges that he was subjected to unconstitutional conditions of confinement while held in an intake area at Riker's Island for a five-day period from July 13, 2017 to July 18, 2017. Based on the facts and conclusions set forth below, the City's unopposed motion to dismiss is granted.

**I. Facts & Prior Proceedings**
Plaintiff filed the Complaint on August 7, 2017, alleging that he was subjected to unconstitutional conditions of confinement while held in an intake area at Riker's Island for a five-day period from July 13, 2017 to July 18, 2017. [1]

In his Complaint, Plaintiff alleges that he arrived at Rikers Island on July 13, 2017 after being sentenced to five days in jail for smoking in a park. On July 14, 2017,

Plaintiff was taken to a court hearing, and upon his return to Rikers Island, he was placed in a "hot, dirty, overcrowded cell where the toilet didn't flush," and that featured a "nose pinching, stomach turning smell" while he awaited housing. Plaintiff alleges that on July 15, 2017, he complained to unnamed officers that he had not yet been housed, that he had "heat sensitive conditions," that he had been placed in the wrong building, and that he could "no longer withstand the overcrowded, dirty, and smelling cell because of [his] heat sensitive condition." That same day, Plaintiff blacked out in his cell due to his heat sensitivity. Plaintiff alleges that after he was awoken by a fellow inmate, his nose began to bleed, and that a fellow inmate informed a correction officer on duty of his condition. The officer called for medical assistance twice but received no answer, and although she had "no knowledge" of his blackout, the officer tended to him with "care and concern."

Plaintiff further alleges that he was escorted to the clinic approximately two and a half hours after his blackout incident. Plaintiff saw a prison doctor, and he informed the doctor of his blackout event and that his head hurt. The doctor informed him that his nose bleed was the most pressing problem, but that if Plaintiff wanted his head looked at, the doctor would set up an appointment and offer the Plaintiff pain killers. Plaintiff declined both offers for treatment.

**\*2** After seeing the doctor, Plaintiff was escorted to a different cell "closer to the entrance," where the escorting officer told Plaintiff that he could "get some clean air" because the "outside door was open." Sometime shortly after 6 pm on July 15, 2017, Plaintiff was transferred to the C95 building at Rikers Island, and around 7 pm, he was placed in cell #4, where he awaited housing. Plaintiff stayed in cell #4 in the C95 building from the evening of July 15, 2017 until the morning of July 17, 2017, when he "was moved from the clean cell [he] was in with one other inmate into an overcrowded, dirty, smelling cell where the toilet didn't flush once again." Plaintiff further alleges that, from July 17, 2017 to shortly after 1 am on July 18, 2017, he was unable to "groom himself properly" or "speak to his family," and that he had been unable to sleep due to "the fact of cutting and stabbing and not knowing or trusting people," which allegedly "kept him on his feet." Plaintiff was held in this cell until shortly after 1 am on July 18, 2017, when he was housed in the "18 Lower 'B' Side" housing unit.

Defendant filed the instant motion to dismiss on January 2, 2018, and the motion was marked fully submitted on February 14, 2018. No opposition or request for extension was received from the Plaintiff.

## II. The Applicable Standard

On a Rule 12(b)(6) motion to dismiss, all factual allegations in the complaint are accepted as true and all inferences are drawn in favor of the pleader. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (quoting *Twombly*, 550 U.S. at 556). In other words, the factual allegations must "possess enough heft to show that the pleader is entitled to relief." *Twombly*, 550 U.S. at 557 (internal quotation marks omitted).

While "a plaintiff may plead facts alleged upon information and belief 'where the belief is based on factual information that makes the inference of culpability plausible,' such allegations must be 'accompanied by a statement of the facts upon which the belief is founded.' " *Munoz-Nagel v. Guess, Inc.*, No. 12 Civ. 1312 (ER), 2013 WL 1809772, at *3 (S.D.N.Y. Apr. 30, 2013) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)); *Prince v. Madison Square Garden*, 427 F. Supp. 2d 372, 384 (S.D.N.Y. 2006); *Williams v. Calderoni*, 11 Civ. 3020 (CM), 2012 WL 691832, at *7 (S.D.N.Y. Mar. 1, 2012)). The pleadings, however, "must contain something more than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (citation and internal quotation omitted).

In considering a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

## III. The Defendant's Motion to Dismiss Plaintiff's Complaint Is Granted

Construing the Complaint liberally, the Plaintiff has failed to state any claim upon which relief may be granted. *See McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004) (citation omitted) ("[W]hen the plaintiff proceeds *pro se*, as in this case, a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations."). The City has submitted authorities sufficient to establish that Cary has failed to exhaust administrative remedies as required by the Prison Litigation Reform Act (the "PLRA"), 42 U.S.C. § 1997e(a); to allege facts showing that the Defendants acted with deliberate indifference to Plaintiff's health and safety or to a serious medical condition; to allege facts showing that Plaintiff's alleged injury arose from some official policy or practice giving rise to municipal liability; and to participate in a physical, as required by the PLRA, 42 U.S.C. § 1997e(c).

**\*3** The PLRA provides, in relevant part, that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). As such, exhaustion of administrative remedies is a prerequisite to the present suit. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002); *see also Simmons*, 2013 WL 1290268, at *7 (noting that Plaintiff's failure to exhaust administrative remedies is an affirmative defense). "Where ... a plaintiff concedes lack of exhaustion, or non-exhaustion is otherwise apparent from the face of the complaint, the Court may decide the exhaustion issue on a Rule 12(b)(6) motion to dismiss." *Simmons*, 2013 WL 1290268, at *8. Moreover, "dismissal on the basis of failure to exhaust is mandatory, [and] an inmate's claims can only proceed ... if, as to each claim, he has exhausted all available administrative remedies, including all appellate remedies provided within the [New York City Department of Correction] system." *Id.*, at *7.

Here, the relevant administrative procedures are as follows. The Department of Correction's Inmate Grievance and Request Program ("IGRP"), set forth in Department of Correction Directive 3376, requires inmates who wish to file a grievance to submit a form to grievance staff within ten business days of the incident giving rise to the grievance. [2] *See Garvin v. Rivera*, No.

13-CV-7054, 2015 WL 876464, at *3 (S.D.N.Y. Feb. 28, 2015). Within five business days of receiving the form, grievance staff must provide an informal resolution, (*see* IGRP § IV(G)(1)), after which the inmate will have five business days to appeal and request a formal hearing, (*see* IGRP § IV(G)(5)(b)). The formal hearing is conducted before the Inmate Grievance Resolution Committee, which issues a written disposition within five business days. (*See* IGRP § IV(I)(2).) Finally, within five business days of the commanding officer's decision, an inmate may appeal to the Central Office Review Committee, which must render a disposition within fifteen days of receipt of the appeal. (*See* IGRP § IV(J)(5).) "[A]n inmate may appeal if he does not receive a timely disposition at any stage" of the process. *Garvin,* 2015 WL 876464, at *3 (internal quotation marks omitted). "The administrative process is complete only when the [Central Office Review Committee] has issued its disposition." *Id.*

Plaintiff has failed to exhaust all available administrative remedies before commencement of the instant suit, thus dismissal is mandatory. The time period pertaining to Plaintiff's underlying grievances is July 13, 2017 to July 18, 2017. Plaintiff signed his Complaint on August 7, 2017, and mailed it on August 21, 2017. Therefore, even if Plaintiff acted expeditiously, it would take approximately five or six weeks from the filing of the initial grievance to complete the mandated grievance process. Even assuming Plaintiff filed his grievance on July 13, 2017, and if there was no delay at any stage of the process, it would have been impossible for Plaintiff to proceed through the entire grievance process, including all appeals, before Plaintiff filed the Complaint on August 7, 2017. Accordingly, Plaintiff has failed to exhaust his administrative remedies,

and on this basis alone, Defendant's motion is granted and the Complaint is dismissed without prejudice. *See Price v. City of New York*, No. 11 Civ. 6170 (TPG), 2012 WL 3798227, at *3 (S.D.N.Y. Aug. 30, 2012) (holding that it would have been impossible for the plaintiff to have pursued his grievance through all steps of the procedure in the 21 days between the alleged incident and the filing of his complaint).

**\*4** Moreover, based on the City's authorities, which are are appropriate and unopposed, Cary has similarly failed to state a claim under federal law relating to Defendant's alleged deliberate indifference to Plaintiff's serious medical condition; to demonstrate that Plaintiff's injury arose from some official policy or practice giving rise to municipal liability; and, to sufficiently allege that Plaintiff has suffered a physical injury, as required by the PLRA. Because Plaintiff has failed to state a claim arising under federal law, Plaintiff's request that supplemental jurisdiction be extended over his state law claims is declined.

**IV. Conclusion**

For the foregoing reasons, the Defendant's motion to dismiss is granted, and the Complaint is dismissed without prejudice.

It is so ordered.

**All Citations**

Slip Copy, 2018 WL 1581988

---

Footnotes

1    "Under the so-called 'prison mailbox rule,' a *pro se* prisoner's papers are deemed filed when they are handed over to prison officials for forwarding to the Court." *See Simmons v. Cripps*, No. 12-CV-106, 2013 WL 1290204, at *4 n.5 (S.D.N.Y. Feb. 15, 2013) (citing *Houston v. Lack*, 487 U.S. 266, 270 (1988)) (finding that the plaintiff's complaint was deemed filed the day it was signed by the plaintiff). Plaintiff signed the Complaint on August 7, 2017, and therefore is considered to have filed the Complaint on that date.

2    Judicial notice has been taken of the IGRP and the foregoing materials related to the procedures for exhausting administrative remedies. *See* Fed. R. Evid. 201 ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."); *see also Christman v. Skinner*, 468 F.2d 723, 726 (2d Cir. 1972) (holding it proper for trial court to take judicial notice of state prison regulations concerning books and magazines).

Cohen v. Welch, Not Reported in Fed. Supp. (2017)

2017 WL 3309713

Case 9:17-cv-01007-DNH-DEP    Document 56    Filed 11/08/18    Page 30 of 64

2017 WL 3309713
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Matththius COHEN, Plaintiff,

v.

CO M. WELCH, Correctional Officer, Upstate
Correctional Facility; Darrin Corrigeux, Correctional
Officer, Upstate Correctional Facility, formerly
known as D. Corrigway; and Sgt. Vesneski,
Upstate Correctional Facility, Defendants.

9:16-CV-593 (FJS/TWD)
|
Signed 08/02/2017

**Attorneys and Law Firms**

MATTHTHIUS COHEN, 15-A-4146, Clinton
Correctional Facility, P.O. Box 2000, Dannemora, New
York 12929, Plaintiff pro se.

OFFICE OF THE NEW YORK, STATE ATTORNEY
GENERAL, The Capitol, OF COUNSEL: RYAN W.
HICKEY, AAG, Albany, New York 12224, Attorneys for
Defendants.

**ORDER**

Frederick J. Sculin, Jr., Senior United States District
Judge

**\*1** Plaintiff, an inmate in the custody of the New
York State Department of Corrections and Community
Supervision ("DOCCS"), brought this action pursuant
to 42 U.S.C. § 1983, alleging that, on May 13, 2016,
Defendants subjected him to excessive force and failed to
intervene in violation of his Eighth Amendment rights.
*See generally* Dkt. No. 23. Defendants filed a motion to
dismiss for failure to state a claim pursuant to Rule 12(b)
(6) of the Federal Rules of Civil Procedure on the ground
that Plaintiff had failed to exhaust his administrative
remedies. *See* Dkt. No. 26. Plaintiff opposed Defendants'
motion. *See* Dkt. Nos. 29, 35.

This Court referred the motion to Magistrate Judge
Dancks for a Report and Recommendation pursuant
to 28 U.S.C. § 636(b) and Local Rule 72.3(c). In

an Order and Report-Recommendation dated July 11,
2017, Magistrate Judge Dancks recommended that this
Court grant Defendants' motion and dismiss Plaintiff's
amended complaint without prejudice for failure to
exhaust administrative remedies. *See* Dkt. No. 43 at 14.
Plaintiff filed objections to those recommendations. *See*
Dkt. No. 44.

After reviewing a magistrate judge's recommendations,
the district court may accept, reject or modify those
recommendations. *See* 28 U.S.C. § 636(b)(1). The court
reviews *de novo* those portions of the magistrate judge's
recommendations to which a party objects. *See Pizzaro
v. Bartlett*, 776 F. Supp. 815, 817 (S.D.N.Y. 1991).
" " 'If, however, the party makes only conclusory or
general objections, ... the Court reviews the Report and
Recommendation only for clear error." ' " *Salmini v.
Astrue*, No. 3:06-CV-458, 2009 WL 179741, \*1 (N.D.N.Y.
June 23, 2009) (quoting [*Farid v. Bouey*, 554 F. Supp. 2d
301] at 306 [ (N.D.N.Y. 2008) ] (quoting *McAllan v. Von
Essen*, 517 F. Supp. 2d 672, 679 (S.D.N.Y. 2007))).

Plaintiff continues to complain that Defendants used
excessive force against him on May 13, 2016, and, in
addition, asserts that he has been denied medical attention
and suffers physically and mentally from cruel and
unusual punishment. *See generally* Dkt. No. 44. Plaintiff
also notes that, "[b]efore the incident of May 13, 2016,
[he] wrote ample grievences [sic] to Albany as well as
hand written letters to Commissions [sic] office as well
as had [his] wife whom is herrassed [sic] as well submit
letters and complaints in fear of [his] life...." *See id.* at 1-2.
Finally, Plaintiff included a document entitled "Inmate
Disciplinary History" as part of his objections, *see id.* at
3; however, none of the incidents listed on that document
occurred on May 13, 2016, which is the only incident that
is the subject of this lawsuit.

Despite the general and conclusory nature of
Plaintiff's objections to Magistrate Judge Dancks'
recommendations, the Court has conducted a *de novo*
review of the record; and, having completed that review,
the Court concludes that Plaintiff has clearly not
exhausted his administrative remedies with regard to the
May 13, 2016 incident. Accordingly, the Court hereby

**\*2 ORDERS** that Magistrate Judge Dancks' July 11,
2017 Order and Report-Recommendation, *see* Dkt. No.

43, is **ACCEPTED in its entirety** for the reasons stated therein; and the Court further

**ORDERS** that Defendants' motion to dismiss Plaintiff's complaint, *see* Dkt. No. 26, is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's amended complaint, *see* Dkt. No. 23, is **DISMISSED without prejudice** for failure to exhaust administrative remedies; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2017 WL 3309713

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

 © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 3311244
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Matththius COHEN, Plaintiff,
v.
Matthew WELCH, et al., Defendants.

9:16-cv-00593 (FJS/TWD)
|
Signed 07/11/2017

**Attorneys and Law Firms**

MATTHTHIUS COHEN, 15-A-4146, Clinton
Correctional Facility, P.O. Box 2000, Dannemora, NY
12929, pro se.

HON. ERIC T. SCHNEIDERMAN, Attorney General
of the State of New York, OF COUNSEL: RYAN
W. HICKEY ESQ., Assistant Attorney General, The
Capitol, Albany, NY 12224, Counsel for Defendants.

**ORDER AND REPORT-RECOMMENDATION**

THÉRÈSE WILEY DANCKS, United States Magistrate
Judge

**\*1** This matter has been referred to the undersigned
for Report and Recommendation by the Honorable
Frederick J. Scullin, Jr., Senior United States District
Judge, pursuant to 28 U.S.C. § 636(b) and Northern
District of New York Local Rule 72.3(c). *Pro se* Plaintiff
Matththius Cohen, an inmate in the custody of the New
York State Department of Corrections and Community
Supervision ("DOCCS"), brings this action pursuant to 42
U.S.C. § 1983, alleging that on May 13, 2016, Corrections
Officer ("C.O.") Welch, C.O. Corrigeux, and Sergeant
("Sgt.") Vesneski subjected him to excessive force and
failed to intervene in violation of his Eighth Amendment
rights. (*See generally* Dkt. No. 23.) Presently before
the Court is Defendants' motion to dismiss for failure to
state a claim pursuant to Federal Rule of Civil Procedure
12(b)(6) on the ground that Plaintiff failed to exhaust
administrative remedies. (Dkt. No. 26.) Plaintiff has
responded in opposition to Defendants' motion. (Dkt.

Nos. 29 and 35.) For the reasons set forth below, the Court
recommends that Defendants' motion be granted.

**I. BACKGROUND AND PROCEDURAL HISTORY**
The following relevant facts are derived from the face of
Plaintiff's amended complaint and are accepted as true for
the purposes of deciding the pending motion to dismiss.
*Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

On May 13, 2016, Plaintiff was performing his assigned
duties as a porter at Upstate Correctional Facility
("Upstate") and was "zambonieing [sic] around the
controle [sic] tower." (Dkt. No. 23 at 6. [1] ) C.O. Welch
and several other officers approached the area with an
inmate who was under escort to his cell. *Id.* C.O. Welch
yelled at Plaintiff to get out of their way, which Plaintiff
did. *Id.* Shortly thereafter, C.O. Welch tracked Plaintiff
down in the B gallery of 11 Building and began yelling at
him in a racially offensive manner about Plaintiff's alleged
failure to get out of the officers' way. *Id.* at 7. C.O. Welch
also threatened Plaintiff with serious physical harm. *Id.*
at 8. The "work crew officer" told C.O. Welch to "lock
[Plaintiff] up." *Id.* C.O Welch brutally assaulted Plaintiff.
*Id.* Neither C.O. Corrigeux nor Sgt. Vesneski acted to stop
the assault. *Id.* at 9.

Thereafter, while under escort by C.O. Welch, C.O.
Corrigeux, and Sgt. Vesneski, C.O. Welch subjected
Plaintiff to racial insults and ongoing threats of serious
harm. *Id.* Specifically, C.O. Welch told Plaintiff that if
Plaintiff reported the assault, he would suffocate Plaintiff
with his pillow during the night. *See id.* In the course
of returning Plaintiff to his cell in 12 Building, C.O.
Corrigeux attempted to break the pinky and ring fingers
on Plaintiff's right hand by bending them sideways; Sgt.
Vesneski directed C.O. Corrigeux to stop. *Id.* at 10.
Plaintiff alleges that he "turned in grievances," to the "IG
Office," counselors, program committee, commissioner,
and superintendent but they have "never been answerd
[sic]." *Id.* at 2-3.

**\*2** Plaintiff's complaint, signed and dated May 14, 2016,
was received by the Court on May 23, 2016. (Dkt. No.
1.) By Decision and Order dated July 25, 2016, only
Plaintiff's Eighth Amendment excessive force and failure
to intervene claims against C.O. Welch, C.O. Corrigeux,
and "Sgt. Doe" survived the Court's *sua sponte* review.
(Dkt. No. 10.) On October 11, 2016, Plaintiff filed an

amended complaint substituting "Sgt. Vesneski" for "Sgt. Doe." (Dkt. No. 24.[2])

Defendants now move to dismiss Plaintiff's amended complaint for failure to state a claim. (Dkt. No. 26.[3]) Plaintiff opposes Defendants' motion. (Dkt. Nos. 29 and 35.)

## II. LEGAL STANDARD

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim that is plausible on its face." *Twombly,* 550 U.S. at 570. While Rule 8(a)(2) "does not require detailed factual allegations ... it demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal,* 556 U.S. at 678 (citation and internal quotations omitted). A complaint which "tenders 'naked assertion [s] devoid of 'further factual enhancement' " does not suffice. *Id.* (citation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555).

**\*3** Where a party is proceeding *pro se*, the court is obliged to "read [the *pro se* party's] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994) (citations omitted); *see also Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009) (courts remain obligated to construe *pro se* complaints liberally even after *Twombly*). "The mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual allegations are consistent with the allegations of the plaintiff's complaint." *Robles v. Bleau,* No. 9:07-CV-0464 (TJM), 2008 WL 4693153, at *6 and n.41 (N.D.N.Y. Oct. 22, 2008)[4] (collecting cases); *see Donhauser v. Goord,* 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) ("where a *pro se* plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside of the complaint to the extent they 'are consistent with the allegations in the complaint.' "), *vacated in part on other grounds,* 317 F. Supp. 2d 160 (N.D.N.Y. 2004); *see also Gill v. Mooney,* 824 F.2d 192, 195 (2d Cir. 1987) (in reviewing district court's dismissal of *pro se* plaintiff's claim, the Second Circuit considered the plaintiff's affidavit submitted in opposition to motion to dismiss).

## III. DISCUSSION

### A. Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake,* ––– U.S. ––––, 136 S. Ct. 1850, 1854-55 (2016). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002). "There is no question that exhaustion is mandatory under

the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007).

Failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones*, 549 U.S. at 216; *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). However, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Nevertheless, dismissal is appropriate if it is clear from the face of the complaint that the plaintiff failed to exhaust administrative remedies. *Id.* at 215-16; *Lee v. O'Harer*, No. 9:13-CV-1022 (TJM/ATB), 2014 WL 7343997, at *3 (N.D.N.Y. Dec. 23, 2014) ("Dismissal under Rule 12(b)(6) for failure to exhaust is appropriate if such failure is evidenced on the face of the complaint and incorporated documents.").

The PLRA requires "proper exhaustion," which means using all steps required by the administrative review process applicable to the institution in which an inmate is confined and doing so properly. *Jones*, 549 U.S. at 218 (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out, and doing so properly") (internal quotations omitted).

In New York State prisons, DOCCS has a well-established three-step Inmate Grievance Program ("IGP"). N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") tit. 7, § 701.5. First, an inmate must file a complaint with the facility's IGP clerk within twenty-one days of the alleged occurrence. *Id.* § 701.5(a)(1). A representative of the facility's Inmate Grievance Resolution Committee ("IGRC") has sixteen calendar days from receipt of the grievance to informally resolve the issue. *Id.* § 701.5(b) (1). If there is no such informal resolution, the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance, *id.* § 701.5(b)(2), and issues a written decision within two working days of the conclusion of the hearing. *Id.* § 701.5(b)(3).

 **\*4** Second, a grievant may appeal the IGRC's decision to the facility's superintendent within seven calendar days of receipt of the IGRC's written decision. *Id.* § 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. *Id.* §

701.5(c)(3)(ii). Grievances regarding DOCCS-wide policy issues are forwarded directly to the Central Office Review Committee ("CORC") for a decision under the process applicable to the third step. *Id.* § 701.5(c)(3)(i).

Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. *Id.* § 701.5(d)(1)(i). CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id.* § 701.5(d)(3)(ii).

There are also special procedures that may be used when the grievance is categorized as "harassment." *Id.* § 701.8. A grievance alleging harassment by staff may be sent directly to the superintendent, and the superintendent must issue a decision within twenty-five days. CORC has thirty days to resolve any appeal. *Id.* §§ 701.8(f), 701.8(i) (incorporating by reference § 701.5(d)(2)(h)).

As set forth above, at each step of the IGP, a decision must be rendered within a specified time period. "Where the IGRC and/or superintendent do not timely respond, an inmate must appeal 'to the next step.' " *Eleby v. Smith*, No. 9:15-CV-0281 (TJM/DEP), 2017 WL 986123, at *4 (N.D.N.Y. Jan. 9, 2017) (quoting 7 N.Y.C.R.R. § 701.6(g)(2)); *see also Smith v. Kelly*, 985 F. Supp. 2d 275, 281 (N.D.N.Y. 2013) (Suddaby, J.) ("[A]ny failure by the IGRC or the superintendent to timely respond to a grievance ... can—and must—be appealed to the next level ... to complete the grievance process.").

Generally, if a plaintiff fails to follow each of the required three steps of the IGP, including receipt of a decision from CORC, prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits.") (internal quotations and citations omitted)).

While the PLRA mandates exhaustion of administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on

the availability of administrative remedies [.]" (quotations and citations omitted)). In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotations and internal citations omitted).

The *Ross* Court identified three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA. *Id.* at 1859-60. [5] First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860. Whether a plaintiff has exhausted his administrative remedies is a question of law to be decided by the court. *See Snider v. Melindez*, 199 F.3d 108, 113-14 (2d Cir. 1999).

**B. Analysis**

**\*5** Defendants argue that it is clear from Plaintiff's filings that Plaintiff failed to exhaust his administrative remedies before filing suit in federal court. (Dkt. No. 26-1 at 8.) The Court agrees.

Specifically, Plaintiff's claims arise from events that took place on May 13, 2016. (Dkt. No. 23 at 6.) Plaintiff also claims he "turned in grievances" to the "IG Office" but they had "never been answerd [sic]." *Id.* at 2-3. Plaintiff then filed this action on May 14, 2016, just one day after the alleged incidents. (Dkt. No. 1 at 15. [6]) Plaintiff's complaint was received and formally filed by the Court on May 23, 2016, only ten days after the alleged events occurred. *Id.* Under the regulations, the first step of the grievance process should be completed within sixteen calendar days after receipt of the grievance. 7 N.Y.C.R.R. § 701.5(b). If an inmate appeals an adverse decision to the superintendent, the superintendent must generally decide the issue within twenty calendar days from the time the appeal was received. *Id.* § 701.5(c). Finally, CORC must

decide an appeal within thirty calendar days from the date that such an appeal is filed. *Id.* § 701.5(d).

In light of this procedure and based on the facts alleged in the amended complaint, it is implausible that Plaintiff was able to exhaust his administrative remedies before commencing this action. *See, e.g.*, *Lopez v. Cipolini*, 136 F. Supp. 3d 570, 581-82 (S.D.N.Y. 2015) (dismissing complaint for failure to exhaust where plaintiff commenced action ten days after alleged incidents occurred); *Perez v. City of New York*, No. 14 Civ. 07502 (LGS), 2015 WL 3652511, at *3 (S.D.N.Y. June 11, 2015) (dismissing action where complaint was signed one week after the events in question allegedly occurred); *Price v. City of New York*, No. 11 Civ. 6170 (TPG), 2012 WL 3798227, at *3 (S.D.N.Y. Aug. 30, 2012) (granting motion to dismiss where it would have been impossible for the plaintiff to have exhausted his administrative remedies in the twenty-one days between the alleged incident and the filing of his initial complaint).

Plaintiff's claim that he informed other prison officials, including the Commissioner and Superintendent of his grievances, does not excuse his failure to exhaust. (*See* Dkt. No. 23 at 2.) Indeed, it is well-settled that "[s]uch correspondence does not satisfy exhaustion and falls outside of the grievance procedures." *Rodriguez v. Cross*, No. 15-CV-1079 (GTS/CFH), 2017 WL 2791063, at *4 (N.D.N.Y. May 9, 2017) (collecting cases); *see also Geer v. Chapman*, No. 9:15-CV-952(GLS/ATB), 2016 WL 6091699, at *5 (N.D.N.Y. Sept. 26, 2016) ("It is well-settled that writing letters to prison officials, or other officials, is insufficient to properly exhaust administrative remedies.").

**\*6** Similarly, Plaintiff's claim that his grievances were never answered does not excuse his failure to exhaust. (*See* Dkt. No. 23 at 3.) As discussed above, a prisoner must proceed through all three levels of the IGP to satisfy the PLRA's exhaustion requirement. "Thus, where a prisoner files a grievance, and the IGRC does not respond, the inmate must nevertheless exhaust his appeals to the facility superintendent and the CORC." *Hernandez v. Coffey*, No. 99-civ-11615 (WHP), 2003 WL 22241431, at *4 (S.D.N.Y. Sept. 29, 2003); *see also Muhammad v. Corr. Officer Douglas*, No. 15-CV-0935 (NSR), 2016 WL 3082657, at *4 (S.D.N.Y. May 26, 2016) ("Compliance requires an inmate to appeal properly to the CORC, even if the inmate receives no response from the IGRC at the first step of

exhaustion."); *Arce v. Keane*, No. 01 Civ. 2648 (BSJ), 2004 WL 439428, at *2 (S.D.N.Y. Mar. 9, 2004) ("An inmate's failure to appeal a grievance is not excused because he has received no response to his initial grievance."). Only after an inmate has properly exhausted all three levels of review, including receipt of a decision from CORC, may an inmate seek relief pursuant to Section 1983. *See Torres v. Carry*, 672 F. Supp. 2d 338, 344 (S.D.N.Y. 2009).

Nevertheless, Plaintiff maintains his administrative remedies were not "available." (Dkt. No. 35.) Specifically, Plaintiff argues that "[w]hen prison [sic] officials fail to timely respond to a grievance, the prisoner has exhausted 'available' administrative remedies under the PLRA." *Id.* at 1. Plaintiff further maintains that his Eighth Amendment claims should not be dismissed because his grievances were not "answerd [sic] in a timly [sic] fashion which made [Plaintiff] feel very unsafe and that [his] life was in danger," thereby leaving Plaintiff with "no other option" but "to file the [§] 1983 for [his] safety." *Id.* Neither argument is convincing.

As an initial matter, Plaintiff claims he turned in grievances to the IG Office, which indicates that the procedure was "available" to him. Further, as discussed above, even if Plaintiff did not receive a timely response from the IGRP, he was required to complete steps two and three of the IGP. *See Heyliger v. Gebler*, 624 Fed.Appx. 780, 782 (2d Cir. 2015) ("Under the regulations ... if at any step of the grievance process[ ] an inmate did not receive a response within the specified timeframe, he was nonetheless permitted to appeal to the next step. Thus, when [the plaintiff] did not receive a written response from the IGRC, appeal to the superintendent was still an available administrative remedy.") (quotation marks, alteration, citation, and footnote omitted); *see also Warren v. Bealey*, No. 9:12-CV-1318 (TJM/RFT), 2014 WL 4715863, at *9 n.8 (N.D.N.Y. Sept. 22, 2014) ("in the event that the IGRC or superintendent ... do not respond to an initial grievance within the period prescribed, it remains the prisoner's responsibility to file an appeal with the CORC") (collecting cases). Indeed, "[o]nly upon exhaustion of these three levels of review may a prisoner seek relief pursuant to § 1983 in federal court." *Id.* at 9. (citations omitted).

Moreover, to the extent Plaintiff argues "special circumstances" justify his failure to comply with the exhaustion requirements before commencing this action,

"that avenue has been foreclosed." *Riles v. Buchanan*, 656 Fed.Appx. 577, 581 (2d Cir. 2016). Specifically, the Supreme Court has held that "[c]ourts may not engraft an unwritten 'special circumstances exception' onto the PLRA's exhaustion requirement." *Ross*, 136 S. Ct. at 1862; *see also Williams*, 829 F.3d at 123 (*Hemphill* and *Giano* have been abrogated by *Ross* to the extent those decisions established the "special circumstances" exception from the exhaustion of administrative remedies requirement in the PLRA). As the Second Circuit explained in *Williams*, "*Ross* largely supplants our *Hemphill* inquiry by framing the exception issue entirely within the context of whether administrative remedies were actually available to the aggrieved inmate." *Williams*, 829 F.3d at 123.

**\*7** Lastly, any efforts Plaintiff may have made *since* the filing of his complaint would not cure his failure to exhaust because the PLRA requires that administrative remedies be exhausted *before* commencing a lawsuit. *See Neal*, 267 F.3d at 121 ("[E]xhausting administrative remedies after a complaint is filed will not save a case from dismissal."); *see also Chalif v. Spitzer*, No. 9:05-CV-1355 (LEK/DEP), 2008 WL 1848650, at *13 (N.D.N.Y. Apr. 23, 2008) (complete exhaustion must have occurred prior to the time the action was commenced); *e.g.*, *Pettus v. McCoy*, No. 9:04-CV-0471 (TJM), 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006) (dismissing action because the inmate-plaintiff filed the complaint "prior to fully completing the administrative review process").

Based upon the foregoing, the Court recommends granting Defendants' Rule 12(b)(6) motion for failure to state a claim.

### C. Dismissal of Action

The Second Circuit has "recognized that failure to exhaust administrative remedies is usually a 'curable, procedural flaw' that can be fixed by exhausting those remedies and then reinstituting the suit." *Neal*, 267 F.3d at 123 (quoting *Snider v. Melindez*, 199 F.3d 108, 111-12 (2d Cir. 1999)). Thus, where a claim is dismissed for failure to exhaust administrative remedies, dismissal without prejudice is appropriate if the time permitted for pursuing administrative remedies has not expired. *Berry v. Kerik*, 366 F.3d 85, 86-87 (2d Cir. 2004); *see, e.g.*, *Pettus*, 2006 WL 2639369, at *1-2 (dismissing complaint without prejudice for failure to exhaust). However, if a prisoner has failed to exhaust available administrative remedies and the time in which to exhaust has expired, it is proper

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.

for the court to dismiss the complaint with prejudice because any attempt to exhaust would be futile. *Id.* at 86; *see, e.g.*, *Hilbert v. Fischer*, No. 12 Civ. 3843(ER), 2013 WL 4774731, at *7 (S.D.N.Y. Sept. 5, 2013) (collecting cases).

Here, the time in which Plaintiff had to exhaust his May 13, 2016, Eighth Amendment claims has likely expired. However, because Plaintiff has raised an "availability" argument in his opposition to Defendants' motion, out of an abundance of caution and in deference to Plaintiff's *pro se* status, the Court recommends dismissal without prejudice to refile following complete exhaustion of available administrative remedies.

**WHEREFORE**, it is hereby

**RECOMMENDED** that Defendants' Rule 12(b)(6) motion to dismiss (Dkt. No. 26) be **GRANTED**, and it is further

**RECOMMENDED** that Plaintiff's amended complaint (Dkt. No. 23) be **DISMISSED WITHOUT PREJUDICE**

for failure to exhaust administrative remedies; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [7] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**All Citations**

Slip Copy, 2017 WL 3311244

---

Footnotes

1    Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

2    The Court notes that Plaintiff's amended complaint is a photocopy of the original complaint with references to "Sgt. Doe" (also referred to as "[o]n duty [Sergeant] during incident" or "[o]n duty 11 Building [Sergeant]") crossed-out and replaced with the handwritten name "Vesneski." The amended complaint is otherwise identical to the original complaint. (*Compare* Dkt. No. 1 *with* Dkt. No. 23.)

3    On October 26, 2016, C.O. Welch and C.O. Corrigeux filed their motion to dismiss for failure to state a claim. (Dkt. No. 26.) Shortly thereafter, Sgt. Vesneski received a copy of the summons and amended complaint. (Dkt. No. 30.) By text order entered December 21, 2016, Sgt. Vesneski's request to join in the pending motion to dismiss for failure to exhaust administrative remedies was granted. (Dkt. Nos. 32 and 34.)

4    The Court will provide Plaintiff with copies of all unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

5    According to the Second Circuit, "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016).

6    Under the "prison mailbox rule," a *pro se* complaint submitted by a prisoner is deemed "filed" at the time it was delivered to "prison authorities for forwarding to the court clerk." *Houston v. Lack*, 487 U.S. 266, 276 (1988); *Noble v. Kelly*, 246 F.3d 93, 97 (2d Cir. 2001). The date that a complaint is signed is the date that the prisoner is presumed to have handed that complaint to a prison guard for mailing. *See Garraway v. Broome Cnty.*, No. 5:03-CV-0681 (TJM), 2006 WL 931729, at *3-4 (N.D.N.Y. Apr. 7, 2006). The final page of Plaintiff's original complaint is dated May 14, 2016, and bears Plaintiff's signature. (Dkt. No. 1 at 15.)

7    If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**End of Document**                                           © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 4779033
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Larry McNAIR, Plaintiff,

v.

Warden Louis RIVERA, and Deputy
Warden of Security Canty, Defendants.
Michael Owens, Plaintiff,

v.

Warden Louis Rivera, and Deputy
Warden of Security Canty, Defendants.
Jeffrey Annunziata, Plaintiff,

v.

Warden Louis RIVERA, and Deputy
Warden of Security Canty, Defendants.

Nos. 12 Civ. 06212(ALC)(SN), 12 Civ.
8325(ALC)(SN), 13 Civ. 0352(ALC)(SN).
|
Sept. 6, 2013.

*ORDER ADOPTING REPORT
AND RECOMMENDATION*

ANDREW L. CARTER, JR., District Judge.

**\*1** *Pro se* Plaintiffs Larry McNair, Michael Owens, and Jeffrey Annunziata filed Complaints against Warden Louis Rivera and Deputy Warden of Security Yolanda Canty (collectively "Defendants") asserting claims pursuant to 42 U.S.C. § 1983 for alleged violations of their constitutional rights due to the "no pass" policy instituted at the Anna M. Kross Center ("AMKC") on Rikers Island. Specifically, the "no pass" policy, which allows only escorted movement through the AMKC, allegedly restricted Plaintiffs' ability to practice their religion, access the law library and medical clinic, and meet with loved ones during visitation hours.

Defendants filed a Motion to Dismiss the respective Complaints on February 22, 2013, arguing Plaintiffs' claims are barred by the Prison Litigation Reform Act, 42 U.S.C. § 1997e, for failure to exhaust administrative remedies. Plaintiff McNair filed an opposition to Defendants' Motion on March 12, 2013. Plaintiffs

Owens and Annunziata did not submit any opposition papers. This Court referred Defendants' Motion to Judge Magistrate Netburn for a Report and Recommendation ("R & R") on April 4, 2013.

After careful consideration, Magistrate Judge Netburn issued a R & R on April 26, 2013, proposing the Motion to Dismiss be denied. Despite notification of the right to object to the R & R, no timely objections were filed. When no objection is made, the Court subjects the R & R to a clear error review. *Arthur v. Goord,* No. 06 Civ. 326(DLC), 2008 WL 482866, at \*3 (S.D.N.Y. Feb. 21, 2008) ("To accept those portions of the report to which no timely objection has been made, 'a district court need only satisfy itself that there is no clear error on the face of the record.' " (quoting *Figueroa v. Riverbay Corp.,* No. 06 Civ. 5364(PAC), 2006 WL 3804581, at \*1 (S.D.N.Y. Dec. 22, 2006))). The Court's review finds no clear error, and accordingly, the Court **ADOPTS** Magistrate Judge Netburn's R & R in its entirety. Defendants' Motion to Dismiss is **DENIED**.

**SO ORDERED.**

**Larry MCNAIR,**

**Plaintiff,**

**-against-**

**Louis RIVERA, et al.,**

**Defendants.**

**Michael OWENS,**

**Plaintiff,**

**-against-**

**Louis RIVERA, et al.,**

**Defendants.**

**Jeffrey ANNUNZIATA,**

**Plaintiff,**

**-against-**

**Louis RIVERA, et al.,**

**Defendants.**

## REPORT & RECOMMENDATION

SARAH NETBURN, United States Magistrate Judge.

**TO THE HONORABLE ANDREW L. CARTER, JR.:**
In these three actions, consolidated for this motion to dismiss, pro se plaintiffs Larry McNair, Michael Owens and Jeffrey Annunziata (collectively, the "plaintiffs"), bring civil rights actions pursuant to 42 U.S.C. § 1983. Plaintiffs allege that, while in the custody of the New York City Department of Correction (the "DOC") at the Anna M. Kross Center (the "A.M.K.C.") on Rikers Island, the DOC instituted a "no pass" policy that violates their federally protected rights. Plaintiffs claim that this "no pass" policy, which allows only escorted movement through the A.M.K.C., has restricted their ability to practice their religion, access the law library and medical clinic, and meet with loved ones during visitation hours.

**\*2** Warden Luis Rivera and Deputy Warden of Security Yolanda Canty (collectively, the "defendants") have moved to dismiss plaintiffs' complaints, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to exhaust available administrative remedies as required by the Prison Litigation Reform Act (the "PLRA"), 42 U.S.C. § 1997e. Because plaintiffs are not required to plead exhaustion of their administrative remedies, I recommend that defendants' motion to dismiss be DENIED.

## BACKGROUND

The following facts are assumed to be true for the purposes of this motion.

### I. Factual Background
In June or July 2012, defendants adopted a "no pass" policy at the A.M.K.C. that prohibits inmates from moving about the facility without an escort. (*See* 12 Civ. 06212, Docket Number ("Doc.No.") 5, Am. Compl. ("McNair Compl.") at II.C–D; 12 Civ. 08325, Doc. No. 2, Compl. ("Owens Compl.") at II.C–D; 13 Civ. 00352, Doc. No. 2, Compl. ("Annunziata Compl.") at II.C–D.[1]) Because insufficient escorting officers are available from 7:00 a.m. to 3:00 p.m., plaintiffs are denied access to, or delayed in accessing, the law library, religious services, the medical clinic and visitors. This interferes with their ability

to advance their lawsuits, practice their religion, obtain medical treatment and communicate with their families. (Pls. Compls. at II.D.) Plaintiffs allege that the "no pass" policy has continued through to the present day. (*Id.* at II.C.)

Because of the "no pass" policy, McNair has suffered:

> ... s leepless nights with chest pains, breathing problems, weight gain, hearing voices, fear for [his] life. [He] could not be treated because, [he had] no one to take [him] to the clinic to receive treatment. After 12 months [he had] finally been prescribed seizure medication by the medical staff. [He could not] defend [himself] for a crime [he] did not commit, because [he could not] get to the law library five days a week, as per NYCDOCS directive.

(McNair Compl. at III.)
Because of the "no pass" policy, Owens has suffered "unnecessary back pain, depression from not being [able] to practice [his] religion (Muslim), and pain and suffering by not being able to be with [his] loved ones during visiting hours." (Owens Compl. at III.)

Because of the "no pass" policy, Annunziata has suffered:

> ... excessive and unnecessary pain, and had [his] life [threatened] jeopardized by not [being] allowed to receive follow-up care from the medical department .... [he has] suffered spiritually by not being able to attend Muslim services and pray to [his] higher power every Friday. [His] medical condition is deteriorating, and [his] life is constantly at risk on a daily basis.

(Annunziata Compl. at III.)

Plaintiffs seek to enjoin the "no pass" policy, and an award of compensatory and punitive damages. (Pls. Compls. at V.)

### II. Steps Taken to Exhaust Available Administrative Remedies
**\*3** In their complaints, plaintiffs state that they filed their grievances at the A.M.K.C. (*Id.* at II.A.) Annunziata

grieved "all of [his complaints]." (Annunziata Compl. at IV.E.1) McNair and Owens grieved the "no pass policy and denial of religious, medical visits," and Owens also grieved "law library services." (McNair Compl. at IV.E.1; Owens Compl. at IV.E.1.) Plaintiffs state that there were no responses to their grievances. (Pls. Compls. at IV.E.2.)

Prompted by the Court's complaint form to describe "all efforts to appeal to the highest level of the grievance process," plaintiffs answered in the following ways: (1) McNair "wrote same grievance to the Warden [Luis] Rivera. Also spoke to someone on the Board of Correction to no avail," (McNair Compl. at IV.E.3); (2) Owens "filed same grievance with Warden [Luis] Rivera and Board of Correction to no avail," (Owens Compl. at IV.E.3); and Annunziata "sent letter to Warden [Luis] Rivera, and [Deputy] Supt Security Canty who also never responded or addressed the complaint," (Annunziata Compl. at IV.E.3). Plaintiffs, however, did not attach any copies of their grievances to their complaints.

### III. Procedural Background

On August 13, 2012, McNair filed his complaint, which was amended on October 11, 2012. On November 8, 2012, the Honorable Andrew L. Carter, Jr. referred McNair's case to a magistrate judge for general pretrial supervision, and on November 9, 2012, the referral was reassigned to my docket. On October 19, 2012, Owens filed his complaint, and on December 26, 2012, Owens's case was referred to my docket for general pretrial supervision. On January 14, 2013, Annunziata filed his complaint, and on January 30, 2013, Annunziata's case was referred to my docket for general pretrial supervision. On January 18, 2013, the Court ordered defendants' proposed motions against McNair and Owens to be consolidated. At defendants' request, on February 11, 2013, Annunziata's case was included in the briefing schedule.

On February 22, 2013, defendants filed a motion to dismiss plaintiffs' complaints.[2] On March 12, 2013, McNair filed his opposition to the motion. On April 4, 2013, Judge Carter referred this motion to me for a report and recommendation. On April 8, 2013, defendants filed their reply brief in support of their motion. Because Owens and Annunziata did not file timely oppositions, on April 9, 2013, I extended their time to oppose until April 23, 2013. Because Owens and Annunziata never opposed the

motion, defendants' motion to dismiss was deemed fully submitted on April 23, 2013.

### DISCUSSION

Defendants move to dismiss plaintiffs' complaints for failure to exhaust administrative remedies.

### I. Statement of Law

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must take "factual allegations [in the complaint] to be true and draw[ ] all reasonable inferences in the plaintiff's favor." *Harris v. Mills,* 572 F.3d 66, 71 (2d Cir.2009) (citation omitted). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985) (citation omitted). The Court should not dismiss the complaint if the plaintiff has provided "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that [the Court] must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*

**\*4** The Court may consider documents that are referenced in the complaint, documents that the plaintiffs relied on in bringing suit and that are either in the plaintiffs' possession or that the plaintiffs knew of when bringing suit, or matters of which judicial notice may be taken. *See Taylor v. Vt. Dep't of Educ.,* 313 F.3d 768, 776 (2d Cir.2002); *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002).

When presented with an unopposed motion, the Court may not find for the moving party without reviewing the record and determining whether there is sufficient support for granting the motion. *See Kinlaw v. Walsh,* 10 Civ. 07539(RMB)(JLC), 2012 WL 2548437, at \*1 (S.D.N.Y. June 29, 2012); *see also Vt. Teddy Bear Co. v. 1–800 Beargram Co.,* 373 F.3d 241, 246 (2d Cir.2004) ( "[C]ourts,

in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law" (citation and internal quotation marks omitted)).

When faced with a *pro se* litigant, the Court must "construe [the] complaint liberally and interpret it to raise the strongest arguments that [it] suggest [s]." *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir.2010) (citation and internal quotation marks omitted); *see Haines v. Kerner,* 404 U.S. 519, 520–21 (1972). "Even in a *pro se* case, however, ... threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis,* 618 F.3d at 170 (internal quotation marks omitted). Thus, although the Court is "obligated to draw the most favorable inferences" that the complaint supports, it "cannot invent factual allegations that [the plaintiff] has not pled." *Id.*

## II. Exhaustion of Administrative Remedies

Defendants argue that plaintiffs did not comply with the A.M.K.C.'s grievance procedures and, therefore, their actions are barred under the PLRA. This is defendants' only argument for dismissal.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement is mandatory "regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible." *Booth v. Churner,* 532 U.S. 731, 739 (2001). It covers "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002).

"[F]ailure to exhaust is an affirmative defense under the PLRA, and ... inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock,* 549 U.S. 199, 216 (2007); *accord* 13D Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Richard D. Freer, Federal Practice and Procedure: Jurisdiction § 3573.4 (3d ed.2008). Dismissal under Rule 12(b)(6) for non-exhaustion is appropriate only if a plaintiff's failure to exhaust is evidenced on the face of the complaint. *Jones,*

549 U.S. at 214; *McCoy v. Goord,* 255 F.Supp.2d 233, 251 (S.D.N.Y.2003) ("If nonexhaustion is clear from the face of the complaint (and incorporated documents), a motion to dismiss pursuant to Rule 12(b)(6) for failure to exhaust should be granted."); *see also Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 74 (2d Cir.1998) ("An affirmative defense may be raised by a [Rule 12(b)(6)] motion to dismiss], without resort to summary judgment procedure, if the defense appears on the face of the complaint.").

**\*5** Defendants assert that plaintiffs' complaints establish that plaintiffs did not comply with the A.M.K.C.'s grievance procedures and, therefore, their claims are barred under the PLRA. [3] Their argument seems to be that the Court's "prisoner complaint forms" provide space for plaintiffs to describe "all efforts to appeal to the highest level of the grievance process" but plaintiffs described efforts that alone would not suffice to perfect a grievance under DOC policy. (*See* Pls. Compls. at IV.E; Defendants' Memorandum of Law in Support of Their Motion to Dismiss ("Defs.Br.") at 8.) Plaintiffs' omissions, defendants argue, establish their failure to exhaust. (*See* Defs. Br. at 5–8; Defendants' Reply Memorandum of Law in Further Support of Their Motion to Dismiss ("Defs. Reply Br.") at 3.)

*Jones* precludes defendants' argument. If exhaustion is not an affirmative pleading requirement, then plaintiffs cannot be penalized for what they do not say in their pleadings about their efforts to exhaust. Thus, and especially in light of the liberal *pro se* pleading requirements, plaintiffs' statements of the efforts they took cannot be construed to mean that they did not pursue the proper avenues for exhaustion. *See Jones,* 549 U.S. at 214 ("Although exhaustion was a 'centerpiece' of the PLRA ..., failure to exhaust was notably not added [to the four enumerated grounds for preliminary judicial screening]. There is thus no reason to suppose that the normal pleading rules have to be altered to facilitate judicial screening of complaints specifically for failure to exhaust.").

Plaintiffs have not pled that they did not exhaust; and at this stage in the litigation they do not need to demonstrate that they did. *See id.* at 216 (holding that prisoners need not demonstrate exhaustion in their complaints); *Pratt v. City of New York,* —— F.Supp.2d ——, 11 Civ. 08355(JGK), 2013 WL 979431, at *3 (S.D.N.Y. Mar. 14, 2013) (finding when amended complaint did not establish

Case 9:17-cv-01007-DNH-DEP    Document 56    Filed 11/08/18    Page 43 of 64

plaintiff failed to comply with grievance procedures, "scope of proper [A.M.K.C.] grievance procedure, [and] whether the plaintiff followed that procedure properly ... should [not] be determined on ... a motion to dismiss"); *Smalls v. Jummonte,* 08 Civ. 04367(DAB), 2010 WL 3291587, at *3 (S.D.N.Y. Aug. 13, 2010) ("While the evidence submitted by Defendants suggests that Plaintiff did not follow the DOC's established grievance procedure, nonexhaustion is not apparent from the face of the Complaint, and Plaintiff must be afforded the opportunity to respond to Defendants' evidence with his own, if any."); *see also Johnson v. Westchester Cnty. Dep't of Corr. Medical Dep't,* 10 Civ. 06309(JGK), 2011 WL 2946168, at *2 (S.D.N.Y. July 19, 2011) (finding that plaintiff's allegations that he filed a complaint, "followed all Rules and [Procedures]," and that "[t]he inmate Grievance within this facility fails to maintain an adequate grievance system" lacked specifics, but was not valid basis for dismissal); *Bailey v. Fortier,* 09 Civ. 00742(GLS)(DEP), 2010 WL 4005258, at *6 (N.D.N.Y. Aug. 30, 2010) ("It should be noted that courts are generally [hesitant] to dispose of the exhaustion defense on a motion to dismiss, and ordinarily will dismiss a complaint at that stage only if it is patently clear from the face of plaintiff's complaint that exhaustion has not occurred and there is no basis to excuse PLRA exhaustion requirement." (citation omitted)), adopted by 2010 WL 3999629 (N.D.N.Y. Oct. 12, 2010).

**\*6** In his opposition papers, McNair does state that the A.M.K.C. "is not equipped with a five (5) level grievance procedure, and the grievance directive policy prevents inmates from appealing grievances where religion is a factor," (McNair's Affirmation in Support of Motion in Opposition to Defendants' Motion to Dismiss ("McNair Opp. Br.") at ¶ 11), and that "grievance officer Jefferson is not conducting his duties consistent with the grievance directive procedure," (*id.* at ¶ 12). The Court may consider these pleadings, first raised in McNair's opposition brief, on this motion to dismiss. *See, e.g., Philippeaux v. United States,* 10 Civ. 06143(NRB), 2011 WL 4472064, at *4 (S.D.N.Y. Sept. 27, 2011). But these additional statements do not clearly resolve which steps McNair actually took. [4] *See Pratt,* 2013 WL 979431, at *3 (finding a lack of clarity is not "a valid basis for dismissal under *Jones,* which does not require that the plaintiff demonstrate exhaustion in the complaint" (citation omitted)). Therefore, they also do not establish grounds to dismiss McNair's complaint. *See id.* at *3 & n. 2 (finding plaintiff had not pled

failure to exhaust his administrative remedies when he pled only that he filed an initial grievance and then was told by supervisor that no "inmates grievance committee" existed).

### III. Conversion of Motion to Dismiss into Motion for Summary Judgment

The Court also declines to convert *sua sponte* defendants' motion to dismiss into a motion for summary judgment. Four concerns animate this decision.

First, if the Court were to convert the motion, I would have to "afford all parties the opportunity to present supporting material." *Friedl v. City of New York,* 210 F.3d 79, 83 (2d Cir.2000). This is especially true when plaintiffs are *pro se* and were provided no notice that the motion might be converted. *Hernández v. Coffey,* 582 F.3d 303, 307–08 (2d Cir.2009) ("*[P]ro se* parties must have 'unequivocal' notice of the meaning and consequences of conversion to summary judgment."); *cf ., e.g., Mateo v. Alexander,* 08 Civ. 08797(RJH)(DCF), 2010 WL 431718, at *2 (S.D.N.Y. Feb. 9, 2010) (converting motion when defendants notified *pro se* plaintiff "that the Court might choose to treat the motion as one for summary judgment, and that to oppose it, [plaintiff] would need to submit evidence". Here, there is no indication that defendants, pursuant to Local Rule 12.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, provided plaintiffs with notice that the motion might be converted. But even if they did, additional factors militate against conversion.

Second, although I could order limited discovery exclusively on the issue of exhaustion, I do not believe such a measure would serve any desirable judicial end. *Cf. Stevens v. City of New York,* 12 Civ. 01918(JPO)(JLC), 2012 WL 4948051, at *3 (S.D.N.Y. Oct. 11, 2012) (discussing that a court must "[b]alanc [e] the need to secure the PLRA's mandates of efficiency and early resolution of prisoner rights suits against litigants' interest in a just disposition of their suits." (citing *McCoy,* 255 F.Supp.2d at 249)). On the contrary, bifurcating discovery, with additional motion practice, creates the potential for complication and delay: indeed, individuals might well be deposed first on exhaustion and again on the merits. The Court does not anticipate that full fact discovery will be sufficiently laborious, moreover, to counter plaintiffs' interest in a just disposition of their suits.

**\*7** Third, even if the Court were inclined to convert the motion to dismiss into one for summary judgment, defendants have not provided or even alluded to any documents that would be dispositive. *See Johnson,* 2011 WL 2946168, at *2 n. 1 (declining to convert motion to dismiss into motion for summary judgment because, *inter alia,* "defendants proffered no evidence going to how plaintiff actually used or failed to use those procedures;" finding that "defendants submitted exhibits purporting to detail the relevant grievance procedures and to demonstrate the plaintiff's awareness of those procedures .... [but], the exhibits would establish not that plaintiff failed to exhaust the applicable grievance procedures, but only what those procedures are"). Thus, the Court has not been presented with a reason to convert the motion.

Fourth, plaintiffs have suggested potential "special circumstances" that, if true, might excuse a lack of exhaustion. *See Pratt,* 2013 WL 979431, at *3 n. 2 (suggesting that the statement to plaintiff that there was no "inmate grievance committee" might constitute special circumstances excusing non-exhaustion) (citing *Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004) (explaining that "special circumstances ... [may] justify [a] prisoner's failure to comply with administrative procedural requirements") (citation and internal quotation marks omitted)). These pleadings, although not dispositive here, support allowing discovery of potentially relevant evidence.

For these reasons, I decline to convert this motion *sua sponte* into a motion for summary judgment. *See, e.g., id.* at *3 (declining to convert motion to dismiss to motion for summary judgment because "the parties [were] ... entitled to an opportunity to take discovery and submit additional relevant evidence, [but] the parties [had] not yet been allowed such an opportunity" (citing *Hernández,* 582 F.3d at 309)).

## IV. Lack of Opposition

Finally, defendants suggest that because "no opposition was filed by ... Owens or ... Annunziata .... the motion as against [them] must be considered unopposed and as such those complaints should be dismissed." (Defs. Reply Br. at 1.) To the extent defendants are arguing that plaintiffs' complaints should be dismissed because Owens

and Annunziata did not file oppositions, that is not a valid ground for dismissal. *See Kinlaw,* 2012 WL 2548437, at *1; *see also Vt. Teddy Bear Co.,* 373 F.3d at 246 (finding that court must review motion for summary judgment even if unopposed). Although a plaintiff's failure to participate may provide grounds for future dismissal, it is not grounds for granting this motion premised on a failure to exhaust.

## CONCLUSION

Because plaintiffs are not required to plead the exhaustion of their administrative remedies, I recommend that defendants' motion to dismiss be DENIED.

\* \* \*

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

**\*8** The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed.R.Civ.P. 6(a), (d) (adding three additional days when service is made under Fed.R.Civ.P. 5(b)(2) (C), (D), (E), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed.R.Civ.P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Andrew L. Carter, Jr. at the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York 10007, and to any opposing parties. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Carter. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. *See* 28 U.S.C. § 636(b) (1); Fed.R.Civ.P. 6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).

## SO ORDERED.

## All Citations

Not Reported in F.Supp.2d, 2013 WL 4779033

Footnotes

1    When applicable, the three complaints will be cited collectively as "Pls. Compls."

2    According to defendants' certificates of service, all plaintiffs were served with the motion to dismiss on February 22, 2013.
     But, as relating to Owens and Annunziata, the motion was not docketed until March 15, 2013.

3    A prison's requirements "define the boundaries of proper exhaustion." *Espinal v. Goord,* 558 F.3d 119, 124 (2d Cir.2009).
     The Court takes judicial notice that, because plaintiffs are confined in a DOC facility, their administrative remedies are
     covered by the DOC's five-step Inmate Grievance Resolution Program ("IGRP").

4    Indeed, McNair's pleadings could suggest that he is challenging the grievance procedure—an issue that need not be
     reached. (*See* McNair Opp. Br. at ¶ 18 ("The defendants however, have not explained whether (1) the IGRP procedures
     were available at A.M.K.C. [and] (2) plaintiff could use NYDOC procedures to complain of a wrong about serious medical
     problems [.] In [the] absence of such a showing by the defendants, dismissal on this ground must be denied at this time.").)

---

**End of Document**                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2018 Thomson Reuters. No claim to original U.S. Government Works.    7

2014 WL 4161960
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Jeffrey PIERRE–LOUIS, Plaintiff,

v.

Officer MARTINEZ, Badge # 14856, Defendant.

No. 12–CV–2240 (NGG)(LB).
|
Signed Aug. 18, 2014.
|
Filed Aug. 19, 2014.

**Attorneys and Law Firms**

Jeffrey Pierre-Louis, Rome, NY, pro se.

Jeffrey S. Dantowitz, The City of New York, New York, NY, for Defendant.

**MEMORANDUM & ORDER**

NICHOLAS G. GARAUFIS, District Judge.

**\*1** Plaintiff, a state prisoner, filed this pro se action alleging that Defendant, a corrections officer, was indifferent to his medical needs while Plaintiff was incarcerated at the Brooklyn Detention Complex in Brooklyn, New York. (Compl.(Dkt.1).) Pending before the court is Defendant Martinez's Motion to Dismiss the Complaint. (Mot. to Dismiss (Dkt.23).) For reasons stated below, Defendant Martinez's motion is GRANTED and the Complaint against him is DISMISSED WITHOUT PREJUDICE.

**I. BACKGROUND**

Plaintiff is in the custody of the New York City Department of Corrections ("DOC") and housed in the Brooklyn Detention Complex. (Compl. at 2–3.) In his Complaint, which he signed on April 29, 2012, Plaintiff alleges that on April 8, 2012, the toilet and sink in his cell overflowed with water. (*See id.* at 4.) Plaintiff "slipt [sic] and fell, injuring [his] back and [his] left hip," which had pins left from a surgery Plaintiff underwent when he was fifteen. (*Id.*) Although Plaintiff told Defendant Martinez that he "was hurt and needed to go to the clinic," Defendant Martinez "denied [Plaintiff] from the clinic." (*Id.*) Plaintiff requested medical treatment consisting of X-rays of his back and hip, as well as permission for his wife to bring Plaintiff his cane from home. (Id) According to Plaintiff, it "took [him] two days to receive any medical attention" consisting of a 400 mg tablet of methocarbamol (a muscle relaxant) and a 400 mg tablet of ibuprofen. (*Id.*) Plaintiff alleges that he filed a grievance complaining of his injuries and requesting X-rays and access to his cane. (*Id* .) As of the date on which he signed the Complaint, he was "still waiting" for a response. (*Id.* at 2, 4.)

**II. PROCEDURAL HISTORY**

Plaintiff initiated this pro se action against Defendant Martinez, the City of New York, and the DOC, alleging a violation of 42 U.S.C. § 1983 and seeking $2.5 million in money damages. (Compl.) By Memorandum and Order on September 13, 2012, the court reviewed the Complaint sua sponte pursuant to 28 U.S.C. § 1915A(a). (Sept. 13, 2012, Order (Dkt.6).) The court dismissed Plaintiff's claims against the City of New York and the DOC but allowed Plaintiff to proceed against Defendant Martinez. (*Id.*)

On May 7, 2013, the court granted Defendant Martinez leave to bring his Rule 12(b)(6) motion to dismiss and set a briefing schedule. (May 7, 2013, Order (Dkt.15).) Defendant Martinez filed his motion and supporting documents on June 24, 2013. [1] (Dkts.17–19.) Appended to the Motion to Dismiss was a declaration of an Assistant Corporation Counsel and a summary of DOC administrative remedies. (Decl. of Jeffrey S. Dantowitz ("Dantowitz Decl.") (Dkt.24).) As required by Local Civil Rule 12.1 of the Eastern District of New York, Defendant Martinez also provided the pro se Plaintiff with notice of his obligations in opposing a motion to dismiss that refers to extrinsic materials, including the possibility that it may be converted into one for summary judgment. (Dkt. 23 at 3–4.)

**\*2** Plaintiff did not file a response by his deadline; instead he filed a motion to appoint counsel on June 24, 2013. (*See* Dkt. 20.) On July 3, 2013, Magistrate Judge Lois Bloom denied Plaintiff's motion without prejudice and extended the time for Plaintiff to file his response until August 9, 2013. (July 3, 2013, Order (Dkt.21).) Plaintiff again failed to file a response by his deadline.

In deference to pro se Plaintiff, on October 4, 2013, the court extended the deadline for him to file his response until November 8, 2013. (Oct. 4, 2013, Order (Dkt.22).) The court warned that "[i]f Plaintiff fails to serve a timely response, Defendant shall file his motion on November 22, 2013, and it will be deemed unopposed." (*Id.* at 2.) Plaintiff has not submitted a response to this day, and the court now treats Defendant's Motion to Dismiss as unopposed.

## III. LEGAL STANDARD

Defendant Martinez has filed his Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6). In considering a motion to dismiss made pursuant to Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, and draw all reasonable inferences in favor of plaintiffs. *Bolt Electric. Inc. v. City of New York.* 53 F.3d 465, 469 (2d Cir.1995). To state a claim upon which relief may be granted, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

Where plaintiffs proceed pro se, their submissions are held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). A pro se complaint and other documents are "to be liberally construed," *Ahlers v. Rabinowitz,* 684 F.3d 53, 60 (2d Cir.2012), and interpreted "to raise the strongest arguments that they suggest," *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996). However, pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Boddie v. N.Y. State Div. of Parole,* 285 F.Supp.2d 421, 426 (S.D.N.Y.2003) (quoting *Traguth v. Zuch,* 710 F.2d 90, 95 (2d Cir.1983)). "Thus, the duty to liberally construe a defendant's complaint is not the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.,* 663 F.Supp.2d 379, 387 (S.D.N.Y.2009) (internal quotations and alterations omitted).

A court considering a Rule 12(b)(6) motion to dismiss for failure to state a claim generally may not consult evidence outside the pleadings. *See Robinson v. Gov't of Malaysia,* 269 F.3d 133, 141 n. 6 (2d Cir.2001); *Burgess v.*

*Goord,* No. 98–CV–2077 (SAS), 1999 WL 33458, at *1 n. 1 (S.D.N.Y. Jan.26, 1999) ("In general, a court may not look outside the pleadings on a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of pro se litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum.") (internal quotation marks and citations omitted); *see also Gregory v. Daly,* 243 F.3d 687, 691 (2d Cir.2001). If matters outside the pleadings are presented to the court, it may convert the motion to dismiss into a summary judgment motion. *See* Fed.R.Civ.P. 12(d).

## IV. DISCUSSION

**\*3** Defendant Martinez argues that Plaintiff's deliberate indifference claim must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) because Plaintiff failed to exhaust the DOC's administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e *et seq.* (Mot. to Dismiss at 5.) Defendant Martinez also argues that the action must be dismissed because Plaintiff has failed to allege facts that demonstrate a constitutional violation. (*Id.* at 10.)

### A. Failure to Exhaust

#### 1. *Exhaustion under the PLRA*

Prior to bringing a section 1983 claim, a prisoner plaintiff must first exhaust his administrative remedies under the PLRA which provides that "[n]o action shall be brought with respect to prison conditions under ... Federal law, by a prisoner confined in any jail, prison, or other correctional facility until ... administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo,* 548 U.S. 81, 90–92, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006) (Section 1997e(a) requires "proper exhaustion," which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."). The Supreme Court has held that the PLRA exhaustion requirement "applies to all inmate suits about prison life," including § 1983 claims. *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Where it is clear that an inmate did not exhaust his administrative remedies, the court must dismiss the action. *See Neal v. Goord,* 267 F.3d 116, 117–18 (2d Cir.2001), *abrogated in part on other grounds by Porter v. Nussle.* 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *Harris v. Bowden,* No. 03–CV–1617 (LAD), 2006 WL 738110, at *2 (S.D.N.Y. Mar.23, 2006) ("Statutory

2014 WL 4161960

exhaustion requirements are mandatory; courts may not dispense with them freely.") (citing *Bastek v. Fed. Crop Ins. Corp.,* 145 F.3d 90, 94 (2d Cir.1998)).

The DOC has established a multi-step administrative remedies process, the Inmate Grievance Resolution Program ("IGRP"), that inmates must follow to meet the PLRA's exhaustion requirement. [2] The IGRP process requires that the inmate file a grievance with the Inmate Grievance Resolution Committee, and then appeal to the Warden, the Central Office Review Committee, and then the Board of Correction. *See, e.g., Martin v. City of New York,* No. 11–CV–600 (PKC), 2012 WL 1392648, at *5 (S.D.N.Y. Apr.20, 2012); *Williams v. City of New York,* No. 03–CV–5342 (RWS), 2005 WL 2862007, at *10 (S.D.N.Y. Nov.1, 2005). To properly exhaust, an inmate must proceed through all the levels of the IGRP process. *Williams,* 2012 WL 1392648, at *10.

Importantly, because exhaustion is not a jurisdictional requirement, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock,* 549 U.S. 199, 216–17, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). Rather, "defendants bear the burden of showing non-exhaustion and the 'issue of exhaustion is generally not amenable to resolution by way of a motion to dismiss.' " *Foreman v. Comm. Goord,* No. 02–CV–7089 (SAS), 2004 WL 385114, at *6 (S.D.N.Y. Mar.2, 2004) (quoting *Nicholson v. Murphy,* No. 02–CV–1815 (MRK), 2003 WL 22909876, at *6 (D.Conn. June 16, 2003).)

**\*4** Dismissal under Rule 12(b)(6) for failure to exhaust is therefore appropriate only where non-exhaustion is apparent from the face of the plaintiff's complaint. *See, e.g., Martin,* 2012 WL 1392648, at *5 (dismissing due to failure to exhaust that was evident on the face of the complaint). Where non-exhaustion is not clear from the face of the complaint, a defendant's motion to dismiss pursuant to 12(b)(6) is not an appropriate vehicle. *McCoy v. Goord,* 255 F.Supp.2d 233, 249 (S.D.N.Y.2003).

### 2. *Plaintiff's Attempts to Exhaust*

In this case, Plaintiff allegedly "told the prison authorities what happened" and filed a grievance. (Compl. at 2, 4.) As of the date on which he signed the Complaint, he was "still waiting" for a response. (*Id.*) However, filing suit shortly after filing a grievance and before receiving a response is premature.

The law is clear that "[exhaustion] must be *completed before* suit is filed." *Burgos v. Craig,* 307 F. App'x 469, 470 (2d Cir.2008) (emphasis added). To complete exhaustion, an inmate in DOC custody must proceed through *all* levels of the IGRP process. *See Rivera v. Anna M. Kross Ctr.,* No. 10–CV–8696 (RJH), 2012 WL 383941, at *7 (S.D.N.Y. Feb.7, 2012) (noting that all levels of the IGRP "must be exhausted for a prisoner to meet the exhaustion requirement"). Furthermore, the IGRP places the burden on the inmate to request a formal hearing if he has not received a response to his grievance within five days of filing it. *Id.* at *5.

In this case, Plaintiff's verbal complaint to the prison officials and his filing of the grievance is the starting point-but not the completion-of the multi-step IGRP grievance procedure. Additionally, given his burden under the IGRP, Plaintiff is not relieved from the exhaustion requirement merely because he was awaiting a response from the prison authorities at the time that he filed his Complaint. Accordingly, Plaintiff's actions are insufficient to comply with the required IGRP grievance procedure and exhaust the administrative remedies under the PLRA. [3] *See Antrobus v. Warden of GRVC,* No. 11–CV–5128 (JMF), 2012 WL 1900542, at *3 (S.D.N.Y. May 25, 2012) (dismissing for failure to exhaust where the plaintiff filed only an initial grievance and did not seek a hearing or otherwise appeal); *Rivera,* 2012 WL 383941, at *7 (dismissing for failure to exhaust where the plaintiff has completed only one step in exhausting his administrative remedies).

Furthermore, it is apparent from the face of the Complaint that it was signed by Plaintiff on April 29, 2012–a mere three weeks after the alleged date of the incident on April 8, 2012. (*See* Compl.) It is clear from this timeline that Plaintiff could not have exhausted the multi-step IGRP grievance process in the short time before he filed suit. *Price v. City of New York,* No. 11–CV–6170 (TPG), 2012 WL 3798227, at *3 (S.D.N.Y. Aug.30, 2012) (dismissing a prisoner complaint for failure to exhaust where plaintiff filed the complaint only 21 days after the events in question).

**\*5** In sum, it is apparent from the face of the Complaint that Plaintiff did not exhaust the DOC administrative remedies when he initiated this lawsuit. Accordingly, Plaintiff's Complaint must be dismissed without prejudice

Case 9:17-cv-01007-DNH-DEP    Document 56    Filed 11/08/18    Page 49 of 64
Pierre-Louis v. Martinez, Not Reported in F.Supp.3d (2014)

2014 WL 4161960

for failure to exhaust the administrative remedies, as required by the PLRA. *See Morales v. Mackalm,* 278 F.3d 126, 128 (2d Cir.2002) ("If a district court dismisses a prisoner's complaint for failure to exhaust administrative remedies, it should do so without prejudice."). Because the court finds that the Complaint must be dismissed for failure to exhaust, the court does not reach the question of Plaintiffs alleged failure to state a claim.

**B. Leave to Amend**

The Second Circuit has cautioned that "[a] pro se complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir.2010). Nonetheless, the court can deny leave to amend when "undue delay, bad faith, or dilatory motive ... undue prejudice to the opposing party ... [or] futility of the amendment" exist. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993) (per curiam); *see also Schwamborn v. Cnty. of Nassau,* 348 F. App'x 634, 635 (2d Cir.2009) (affirming denial of pro se prisoner plaintiff's motion to amend). Leave to amend is futile "where the claim or defense proposed to be added has 'no colorable merit.' " *Oliver v. Demarinis & Co.,* No. 90–CV–7950 (SS), 1993 WL 33421, *5 (S.D.N.Y.1993) (citation omitted). A court measures futility under the same standard as a motion to dismiss under Fed.R.Civ.P. 12(b)(6). *Nettis v. Levitt,* 241 F.3d 186, 194 & n. 4 (2d Cir.2001). The decision whether to permit a plaintiff to amend his pleadings is committed to a district court's "sound discretion." *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 200 (2d Cir.2007).

In this case, Plaintiff has never requested leave to amend in the over two years that have elapsed since he first filed his Complaint. Furthermore, even a liberal reading of Plaintiff's Complaint does not suggest that he has inadequately or inartfully pleaded a valid claim and that he should be given a chance to reframe it. As explained above, it is apparent from the face of the Complaint that Plaintiff failed to exhaust the required DOC remedies prior to initiating this action. No amendment would cure this since the court would disregard any remedies that postdate the filing of the Complaint. *See Kasiem v. Switz,* 756 F.Supp.2d 570, 575 (S.D.N.Y.2010) ("[P]ost-exhaustion amendment of pleadings filed originally before exhaustion to reflect that exhaustion has become complete cannot cure the original non-exhaustion defect."); *see also Gay v. Terrell,* No. 12–CV–2925 (CBA), 2013 WL 5437045, at *3 (E.D.N.Y. Sept.27, 2013) (same). Accordingly, Plaintiff's Complaint merits dismissal, rather than leave to amend.

**V. CONCLUSION**

**\*6** For the foregoing reasons, Defendant Martinez's Motion to Dismiss is GRANTED and the Complaint against Defendant Martinez is DISMISSED WITHOUT PREJUDICE.

The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 4161960

Footnotes

1    Under the court's Individual Rules, motions are not to be filed with the court until they are fully briefed. Rather, motions and response papers should only be served by the parties on each other, and the fully briefed motion should be filed with the court on the date of the reply. As such, the court terminated Defendant Martinez's motion for being filed prematurely before it was fully briefed. (Dkt.22.) Defendant Martinez refiled the motion and supporting documents on November 25, 2013, after Plaintiff failed to submit a response by his deadline. (*See* Dkts. 23–25.)

2    The procedures underlying the IGRP have been described in numerous judicial opinions. Like other courts in this Circuit, the court takes judicial notice of the IGRP procedures, without relying on the extrinsic materials appended to the Motion to Dismiss. *See, e.g., Mamon v. N.Y. City Dep't of Corr.,* No. 10–CV–8055 (NRB), 2012 WL 260287, at *3 n. 4 (S.D.N.Y. Jan.27, 2012); *Swanston v. Dep't of Corr.,* No. 11–CV–1219 (CM), 2011 WL 5105489, at *2 (S.D.N.Y. Oct.27, 2011).

3    The court notes that compliance with the PLRA's exhaustion requirements is excused where: (1) administrative remedies are not available; (2) defendants have either waived this defense or acted so as to estop them from raising the defense;

2014 WL 4161960

or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, otherwise justify the prisoner's failure to comply with the exhaustion requirement. *Ruggiero v. Cnty. of Orange,* 467 F.3d 170, 175–76 (2d Cir.2006) (citing *Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004)). However, Plaintiff has not asserted any of these grounds—or anything that could be construed as these arguments—in his pleadings. Plaintiff does not allege, and there is nothing in his Complaint to suggest, that administrative remedies were unavailable to him in any way. Similarly, there is no factual basis for waiver or estoppel of the exhaustion defense on the part of the Defendant. Finally, Plaintiff has alleged no special circumstances that would justify his failure to comply with all steps of the IGRP.

---

**End of Document**                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:17-cv-01007-DNH-DEP    Document 56    Filed 11/08/18    Page 51 of 64

2012 WL 3798227
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Joshua S. PRICE, Plaintiff,
v.
CITY OF NEW YORK, Defendant.

No. 11 Civ. 6170(TPG).
|
Aug. 30, 2012.

## OPINION

THOMAS P. GRIESA, District Judge.

**\*1** Plaintiff, Joshua S. Price, is an inmate formerly housed at the Northern Infirmary Command, a New York City Department of Correction ("DOC") facility on Rikers Island. Plaintiff brings this action under 42 U.S.C. § 1983, alleging that he was served food that made him sick for several days.

Defendant, the City of New York, moves to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6).

The motion is granted.

### The Complaint

Plaintiff alleges that during the afternoon meal at the Northern Infirmary Command on July 2, 2011, he received food that smelled bad. Plaintiff further alleges that he complained to an officer, but that the officer said nothing was wrong with the food. He states that he had no choice but to eat the food. Plaintiff apparently ate the food.

On July 3, 2011, plaintiff allegedly became ill with severe stomach pain, diarrhea, vomiting, headache, and lightheadedness. He alleges that he was sick until July 8, 2011, that he was largely unable to move during his illness due to pain and diarrhea, and that he missed a court appearance as a result.

Plaintiff states that he filed a grievance with the correctional facility regarding his claim. According to plaintiff, the result of his grievance was "nothing they have not responded." Plaintiff further states that he sent his grievance to Albany.

Plaintiff filed his complaint on July 23, 2011. He seeks financial compensation for his pain and suffering in the amount of $50,000. On October 19, 2011, the court granted plaintiff's request to proceed *in forma pauperis.* Plaintiff originally named as defendant "New York City Department of Correctional Services Food Administration." In an order of service dated October 25, 2011, the court stated that it was unclear whether such an entity exists but found that it was clear that plaintiff intended to sue the City of New York. As such, the court dismissed the New York City Department of Correctional Services Food Administration and added the City of New York as a defendant. On January 12, 2012, defendant moved to dismiss the complaint under Rule 12(b)(6). On January 24, 2012, defendant filed a certificate of service certifying that the motion papers had been served on plaintiff. To date, plaintiff has not responded to the motion.

### Discussion

To survive a motion to dismiss under Rule 12(b)(6) of the Fed. R. of Civ. Proc., a complaint must plead sufficient facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v.. Twombly,* 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009). Where a plaintiff is proceeding *pro se,* the complaint is held to a less stringent standard, and the court must construe the plaintiff's pleadings liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007); *Pabon v. Wright,* 459 F.3d 241, 248 (2d Cir.2006). In deciding a motion under Rule 12(b) (6), a court must accept as true the facts alleged in the complaint, drawing all reasonable inferences in the plaintiff's favor, and may consider documents attached to the complaint, incorporated by reference into the complaint, or known to and relied on by the plaintiff in bringing the suit. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007).

**\*2** A motion under Rule 12(b)(6) should be granted where "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Goldman*

*v. Belden,* 754 F.2d 1059, 1065 (2d Cir.1985) (internal quotations omitted). It should also be granted where an affirmative defense or other reason barring relief is apparent from the face of the complaint. *Conopco, Inc. v. Roll Int'l et al.,* 231 F.3d 82, 86–87 (2d Cir.2000).

Defendant argues that the complaint should be dismissed because: (i) plaintiff has not exhausted his administrative remedies; (ii) plaintiff concealed deposits into his inmate account on his application to proceed *in forma pauperis,* warranting dismissal under 28 U.S.C. § 1915(a)(1); (iii) plaintiff has failed to sufficiently allege a constitutional violation; (iv) plaintiff's claims for compensatory damages are barred by Section 1997e(e) of the Prison Litigation Reform Act as he alleges only a *de minimus* physical injury; and (v) plaintiff has not adequately pled a basis for municipal liability.

*Failure to Exhaust Administrative Remedies*
Where Congress so requires, a plaintiff must exhaust administrative remedies prior to pursuing an action under 42 U.S.C. § 1983. *See Giano v. Goord,* 250 F.3d 146, 150 (2d Cir.2001); *Lawrence v. Goord,* 238 F.3d 782, 785 (2d Cir.2001); *Nussle v. Willette,* 224 F.3d 95, 97–98 (2d Cir.2000).

Under the Prison Litigation Reform Act ("PLRA"), Congress has stated that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or another Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This provision imposes a mandatory exhaustion requirement on incarcerated plaintiffs prior to filing an action in federal court. *Woodford v. Ngo,* 548 U.S. 81 (2006); *Porter v. Nussle,* 534 U.S. 516, 524 (2002). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.,* at 532.

The Supreme Court has recognized that the PLRA was enacted "to reduce the quantity and improve the quality of prisoner suits, and to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter,* 534 U.S. at 524–25. The "administrative process can serve a constructive purpose in resolving inmate claims, remedying errors by prison officials, and streamlining and

clarifying those issues that remain for a court to decide." *Neal v. Goord,* 267 F.3d 116, 122 (2d Cir.2001). The Second Circuit has stated that "courts must take care not to frustrate the policy concerns underlying § 1997e(a) by allowing inmateplaintiffs to file or proceed with lawsuits before exhausting administrative remedies." *Id.*

**\*3** The DOC has an established grievance procedure, which

> requires the inmate to: (1) file a complaint with the Inmate Grievance Review Committee ("IGRC") for informal resolution within five working days; (2) request a formal hearing before the [IGRC], with a recommendation to be made within three working days; (3) appeal to the facility warden, who must render a decision within five working days; (4) appeal to the NYCDOC Central Office Review Committee ("CORC"), who must issue a recommendation within twenty working days; and (5) appeal to the Board of Correction, who must issue a recommendation to the Commissioner within twenty working days. The Commissioner must issue a final decision within ten working days of receipt of that recommendation.

*Piper v. City of New York,* 2004 U.S. Dist. LEXIS 29214, at *6 (S.D.N.Y. Mar. 16, 2004) (citing NYCDOC Reg. §§ III(B)(1)-(5)). A prisoner's remedies are not exhausted until he proceeds through all the steps of the grievance procedure. *Martinez v. Williams,* 349 F.Supp.2d 677, 682 (S.D.N.Y.2004). Furthermore, remedies must be exhausted *before* the suit is filed. *Neal,* 267 F.3d at 122. "Subsequent exhaustion after suit is filed therefore is insufficient." *Id.*

In this case, the events giving rise to plaintiff's claim allegedly occurred beginning July 2, 2011, with the results lasting through July 8, 2011. Plaintiff subsequently filed his complaint in this case on July 23, 2011. Although his complaint states that he filed a grievance, there is no indication that he pursued his grievance through all steps of the procedure. Furthermore, given the timelines for the

2012 WL 3798227

grievance procedure outlined in the DOC's regulations, it would have been impossible for him to do so in the 21 days between the alleged incident and the filing of his complaint. It is clear from the face of the complaint that plaintiff has failed to exhaust the administrative remedies available to him. As such, plaintiff's complaint should be dismissed under Rule 12(b)(6) for failure to state a claim on which relief can be granted.

*Additional Grounds for Dismissal*

As noted above, defendant also moves to dismiss plaintiff's complaint on the grounds that plaintiff concealed information on his *in forma pauperis* application; failed to sufficiently allege a constitutional violation; alleges only a *de minimus* physical injury, which is insufficient under the PLRA; and did not adequately plead a basis for municipal liability.

However, plaintiff's failure to exhaust his administrative remedies is a fully adequate grounds for dismissal. As such, the court need not reach these additional arguments, and to do so would frustrate Congress's purpose in requiring exhaustion of remedies under the PLRA.

*Conclusion*

Defendant's motion is granted. The case is dismissed. This opinion resolves the motion listed as item number 15 on the docket.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 3798227

---

**End of Document**                                             © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:17-cv-01007-DNH-DEP    Document 56    Filed 11/08/18    Page 54 of 64

Tinsley v. Greene, Not Reported in F.Supp. (1997)
1997 WL 160124

1997 WL 160124
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Larry TINSLEY, Plaintiff,

v.

Gary GREENE, Deputy Superintendent of Great
Meadow Correctional Facility; Jim Lanfear,
Maintenance Supervisor, Great Meadow
Correctional Facility; Gary Yule, Corrections
Officer, Great Meadow Correctional Facility;
and David Roberts, Senior Counselor, Great
Meadow Correctional Facility, Defendants.

No. 95–CV–1765 (RSP/DRH).
|
March 31, 1997.

**Attorneys and Law Firms**

Larry Tinsley, Pro Se.

Dennis C. Vacco, New York State Attorney General,
Darren O'Connor, Assistant Attorney General, of
counsel, for Defendants.

ORDER

POOLER, District Judge.

**\*1** The above matter comes to me following a report-
recommendation and order by Magistrate Judge David
R. Homer, duly filed on the 13th day of September,
1996. Dkt. No. 24. Following ten days from the service
thereof, the clerk has sent me the entire file, including any
objections thereto. Plaintiff Larry Tinsley filed objections.
Dkt. Nos. 25, 26.

In his report-recommendation, Magistrate Judge Homer
advises that Tinsley failed to establish or raise a genuine
issue of material fact regarding the nature of his
confinement. Report-recommendation, Dkt. No. 24, at
9–10. There is no dispute that prison officials confined
Tinsley to keeplock and loss of some privileges for 60
days after they conducted a search of his cell, found a
marijuana cigarette in the cell, and found Tinsley guilty
of possessing a controlled substance after a Tier III
disciplinary hearing. Tinsley's conviction and sentence

were affirmed on administrative appeal. In his lawsuit
under 42 U.S.C. § 1983, Tinsley raises several charges to
the manner in which defendants conducted the search and
disciplinary hearing. However, Tinsley failed to specify in
any manner that his punishment posed an "atypical and
significant hardship on [him] in relation to the ordinary
incidents of prison life." *Sandin v. Connor,* 515 U.S.
472, ——, 115 S.Ct. 2293, 1300, 132 L.Ed.2d 418, ——
(1995). Without this showing, plaintiff failed to allege a
deprivation of his Fourteenth Amendment due process
liberty interest, and his civil rights claim must fail. *Id.*

In his objections to the report-recommendation, Tinsley
makes general attacks regarding the alleged bias of
Magistrate Judge David Homer and argues that the
magistrate judge has misconstrued his claims. Plaintiff
also asks me to reconsider defendants' summary judgment
motion and review plaintiffs memorandum opposing the
motion. However, Tinsley has not raised any allegation
regarding the nature of his punishment, which is the
threshold issue under *Sandin.* I have reviewed the
entire file in this matter, including plaintiff's many
submissions, and I find that he failed to raised any
issue of fact to support an alleged deprivation of his
due process liberty interests. Magistrate Judge Homer's
thorough report-recommendation is neither biased nor a
mischaracterization of plaintiffs claims.

For the foregoing reasons, it is therefore

ORDERED that the report-recommendation of
September 13, 1996, is approved, and

ORDERED that plaintiffs' motion for default summary
judgment is denied as moot, and

ORDERED that defendants' motion for summary
judgment is granted, and it is further

ORDERED that the clerk serve a copy of this order upon
the parties by regular mail.

IT IS SO ORDERED.

HOMER, United States Magistrate Judge.

REPORT–RECOMMENDATION AND ORDER [1]

Tinsley v. Greene, Not Reported in F.Supp. (1997)

Case 9:17-cv-01007-DNH-DEP    Document 56    Filed 11/08/18    Page 55 of 64

1997 WL 160124

The plaintiff a New York State Department of Correctional Services (DOCS) inmate currently confined at the Great Meadow Correctional Facility (Great Meadow), brought this pro se action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that defendants violated his rights under the Fourth and Fourteenth Amendments in connection with a search of his cell and ensuing disciplinary hearing. Plaintiff seeks compensatory and punitive damages as well as injunctive relief.

**\*2** Presently pending are defendants' motion for summary judgment (Docket No. 17), plaintiff's letter-memorandum requesting summary judgment by default (Docket No. 11), and plaintiff's motions for a pre-trial conference (Docket No. 20) and for appointment of counsel (Docket No. 21). For the reasons stated below, it is recommended that the defendants' motion be granted and that plaintiff's motions be denied.

## I. BACKGROUND

On October 30, 1995, while plaintiff was incarcerated at Great Meadow, defendant Greene received information from a confidential source that plaintiff was concealing escape materials. Defendant Greene ordered the search of plaintiff's prison cell. The search was executed by Corrections Officer Rando and defendant Yule and was supervised by Sergeant Smith. No escape materials were found. However, the officers found a rolled cigarette in plaintiff's cell. The cigarette tested positive for marijuana. Plaintiff was placed in keeplock [2] and was given a contraband receipt for the cigarette that was removed from his cell.

Plaintiff was served with a misbehavior report which charged him with possession of a controlled substance. A Tier III disciplinary hearing [3] was commenced on November 3, 1995 before defendant Lanfear as the hearing officer. During the hearing, plaintiff claimed that defendant Greene failed to corroborate the reliability of the confidential informant, the search was improperly supervised, he did not receive the requisite contraband slip, defendants did not remove any contraband item from plaintiff's cell, and defendants failed to sign the misbehavior report. Plaintiff also objected when witnesses were not called in the order he had requested.

At the conclusion of the hearing on November 7, 1995, defendant Lanfear found plaintiff guilty based upon the

> statement in the misbehavior report submitted by C.O. Rando endorsed by C.O. Yule. Testimony during hearing by C.O. Yule verified the report and stated the substance was found in Tinsley's cell. Testimony during hearing by Sgt. Sawyer stated he received the item found by C.O. Rando and tested same which proved positive for controlled substance. Testimony was considered during hearing by Tinsley.

Defs.' Statement Pursuant to Rule 7.1(f) (Docket No. 17), Ex. A, p. 16. Plaintiff was sentenced to confinement in keeplock for sixty days and loss of packages, commissary and telephone privileges for sixty days. Shortly after this action was commenced, plaintiff's conviction and sentence were affirmed on administrative appeal.

## II. SUMMARY JUDGMENT

### A. Legal Standard

Under Fed.R.Civ.P. 56(c), if there is "no genuine issue as to any material fact ... the moving party is entitled to judgment as a matter of law ... where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The burden to demonstrate that no genuine issue of material fact exists falls solely on the moving party. *Federal Deposit Ins. Corp. v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994); *see also Heyman v. Commerce and Industry Ins. Co.,* 524 F.2d 1317, 1320 (2d Cir.1975). Once the moving party has provided sufficient evidence to support a motion for summary judgment, the opposing party must "set forth specific facts showing that there is a genuine issue for trial" and cannot rest on "mere allegations or denials" of the facts asserted by the movant. Fed.R.Civ.P. 56(e); *accord Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525–26 (2d Cir.1994).

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Tinsley v. Greene, Not Reported in F.Supp. (1997)

1997 WL 160124

Case 9:17-cv-01007-DNH-DEP    Document 56    Filed 11/08/18    Page 56 of 64

**\*3** The trial court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmovant. *American Cas. Co. of Reading Pa. v. Nordic Leasing, Inc.,* 42 F.3d 725, 728 (2d Cir.1994); *see also Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985). The nonmovant may defeat summary judgment by producing specific facts showing that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

B. Discussion

The defendants move for summary judgment on the grounds that (1) plaintiff's due process allegations fail to state a claim, (2) plaintiff's hearing was conducted in accordance with constitutional requirements, (3) the search of plaintiff's cell did not violate any of plaintiff's constitutional rights, and (4) defendants are entitled to qualified immunity.

1. Due Process Liberty Interest

Plaintiff contends that his due process rights were violated because the November 3–7, 1995 disciplinary hearing was improperly executed, and as a result, he was wrongly confined to sixty days keeplock.[4] In their motion for summary judgment, defendants contend that under *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), plaintiff lacked any liberty interest protected by the Due Process Clause.

A due process claim as alleged by plaintiff will lie under section 1983 only where the alleged violation infringed a cognizable liberty interest. *Allison v. Kyle,* 66 F.3d 71, 74 (5th Cir.1995). Under *Sandin,* a court must first determine whether the deprivation of which an inmate complains merits the protections afforded by the Due Process Clause. A protected liberty interest

> will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force. nonetheless imposes *atypical and significant*

> *hardship on the inmate in relation to the ordinary incidents of prison life.*

*Id.* at 2300 (emphasis added). The Court held that confinement of the plaintiff for thirty days in a segregated housing unit infringed no liberty interest protected by the Due Process Clause. *Id.* at 2302.

At first blush *Sandin* appeared to mark a radical change in the litigation of inmates' due process claims. It appeared to suggest that the number of sufficiently stated claims would be drastically reduced. *See Orellana v. Kyle,* 65 F.3d 29, 31–32 (5th Cir.1995), *cert. denied,* 516 U.S. 1059, 116 S.Ct. 736, 133 L.Ed.2d 686 (1996) ("it is difficult to see that any other deprivations in the prison context, short of those that clearly impinge on the duration of confinement, will henceforth qualify for constitutional 'liberty' status.... [T]he ambit of [inmates'] due process liberty claims has been dramatically narrowed.").

Indeed, several circuit courts have rejected prisoners' due process claims under *Sandin* where the deprivation complained of was solely confinement in segregated housing. *See, e.g., Pichardo v. Kinker,* 73 F.3d 612, 613 (5th Cir.1996) (indefinite confinement in administrative segregation for affiliation with gang not atypical and significant under *Sandin* ); *Luken v. Scott,* 71 F.3d 192, 193 (5th Cir.1995), *cert. denied,* 517 U.S. 1196, 116 S.Ct. 1690, 134 L.Ed.2d 791 (1996) (segregation without more implicates no liberty interest); *Rimmer–Bey v. Brown,* 62 F.3d 789, 790–91 (6th Cir.1995)(placement in administrative segregation not atypical and significant in context of life sentence).

**\*4** Several judges in this district have adopted this position. *See Polanco v. Allan,* No. 93–CV–1498, 1996 WL 377074, at \*2 (N.D.N.Y. July 5, 1996) (McAvoy, C.J.) (confinement in a special housing unit (SHU) for up to one year not protected by Due Process Clause); *Figueroa v. Selsky,* No. 91–CV–510 (N.D.N.Y. Oct. 5, 1995) (Scullin, J.) (seven and one-half months in SHU not protected); *Delaney v. Selsky,* 899 F.Supp. 923, 927 (N.D.N.Y.1995) (McAvoy, C.J.) (197 days in SHU not protected); *Ocasio v. Coughlin,* No. 94–CV–530 (N.D.N.Y. Feb. 5, 1996) (Scullin, J.) (180 days in SHU not protected); *Gonzalez v. Coughlin,* No. 94–CV–1119 (N.D.N.Y. Jan. 10, 1996) (Report–Recommendation of M.J. Hurd) (163 days in keeplock not protected), *adopted,* (N.D.N.Y. May 6, 1996) (Cholakis, J.), *appeal docketed,* No. 96–2494 (2d Cir. June 10, 1996); *Taylor v. Mitchell,* No. 91–CV–1445

WESTLAW  © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Tinsley v. Greene, Not Reported in F.Supp. (1997)

Case 9:17-cv-01007-DNH-DEP    Document 56    Filed 11/08/18    Page 57 of 64

1997 WL 160124

(N.D.N.Y. Feb. 5, 1996) (Cholakis, J.) (sixty days in SHU not protected); *Cargill v. Casey,* No. 95–CV–1620, 1996 WL 227859, at *2 (N.D.N.Y. May 2, 1996) (Pooler, J.) (dismissing as frivolous complaint alleging due process violation resulting in keeplock confinement for thirty days). Under these cases, based solely on its duration, plaintiff*s* confinement in keeplock for sixty days would not constitute a cognizable liberty interest under *Sandin.*

Other circuits, however, have viewed *Sandin* less as a durational, bright line bar to statement of a claim than as an additional issue of fact for litigation. *See, e.g., Bryan v. Duckworth,* 88 F.3d 431, 433–34 (7th Cir.1996) (question of fact whether disciplinary segregation was atypical and significant under *Sandin* ); *Williams v. Fountain,* 77 F.3d 372, 374 n. 3 (11th Cir.1996) (noting *Sandin* decided by only 5–4 majority and holding that segregation for one year provided basis for assuming atypical and significant deprivation under *Sandin* ); *Gotcher v. Wood,* 66 F.3d 1097, 1101 (9th Cir.1995) (placement in disciplinary segregation presents issue of fact whether it constitutes an atypical and significant deprivation under *Sandin* ).

The Second Circuit appears generally to be following the Seventh, Ninth and Eleventh Circuits. The Second Circuit has not yet definitively addressed the effect of *Sandin* on its prior holdings. *See Rodriguez v. Phillips,* 66 F.3d 470, 480 (2d Cir.1995). It has recently held, however, that *Sandin* does apply retroactively and, it appears, that a plaintiff bears the burden of proving that the deprivation in question imposed an atypical and significant hardship. *See Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996); *Samuels v. Mockry,* 77 F.3d 34, 37–38 (2d Cir.1996); *see also Giakoumelos v. Coughlin,* 88 F.3d 56, 62 (2d Cir.1996) (dicta that whether confinement in SHU is "atypical and significant" under *Sandin* presents question of fact). One judge in this district has concluded from these cases that fact-finding is required to resolve whether a deprivation is atypical and significant. *Compare Silas v. Coughlin,* No. 95–CV–1526, 1996 WL 227857, at *1 (N.D.N.Y. April 29, 1996) (Pooler, J.) (denying motion to dismiss due process claim where plaintiff was confined in SHU for 182 days, holding that Second Circuit's interpretation of *Sandin* mandated further fact-finding as to nature of plaintiff's alleged deprivation from confinement), *with Cargill v. Casey, supra* (due process claim based on confinement in keeplock for thirty days dismissed as frivolous).

**\*5** Under these cases, consideration must be given to whether a plaintiff has established, or raised, a genuine question of fact concerning his disciplinary confinement. Here, plaintiff has raised no question of fact concerning his confinement in keeplock. Plaintiff has not alleged rare, unique or unusual hardships of the kind cited in *Sandin* as examples of atypical and significant deprivations. 515 U.S. at ——, 115 S.Ct. at 2300 (transfer to a mental hospital and involuntary administration of psychotropic drugs), or that detention in keeplock imposed a hardship on plaintiff because of his special, unique or unusual condition while incarcerated. *See Delaney v. Selsky,* 899 F.Supp. at 927–28 (question of fact whether confinement in SHU created atypical and significant deprivation for inmate who alleged such confinement caused back problems because of his unusual height of nearly seven feet).

Segregated confinement is a known and usual aspect of incarceration in the New York prison system. *See Sandin v. Conner,* 515 U.S. at ——, 115 S.Ct. at 2301 ("Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law."). The existence of keeplock has been authorized by statute, N.Y. Correct. Law § 112(1) (McKinney 1987), and implemented by DOCS regulations. N.Y. Comp.Codes R. & Regs. tit. 7, § 301.6 (1995). Those regulations describe the conditions and restrictions of confinement in keeplock. *Id.* at pts. 302–05. The deprivations are, therefore, part of the New York prison "regime ... to be normally expected" by one serving a sentence in that system. *Sandin v. Conner,* 515 U.S. at ——, 115 S. Ct. at 2302.

Moreover. confinement in keeplock or SHU may result not only from the imposition of discipline, as here. Inmates may also be placed in keeplock or SHU for reasons of administration, N.Y. Comp.Codes R. & Regs. tit. 7, § 301.4(b) (1995); protection, *id.* at § 301.5; detention, *id.* at § 301.3; reception, diagnosis and treatment, *id.* at pt. 306; or for any other reason. *Id.* at 301.7(a). The conditions for inmates confined in keeplock, including plaintiff, are the same regardless of the reason for placement there. *Id.* at pts. 302–05.[5]

Inmates in the New York system have no right to be incarcerated in any particular institution, cell or block of cells, nor do they enjoy a right to be housed in the general prison population or to participate in any particular

Tinsley v. Greene, Not Reported in F.Supp. (1997)

Case 9:17-cv-01007-DNH-DEP   Document 56   Filed 11/08/18   Page 58 of 64

1997 WL 160124

program offered at an institution. *Cf. Meachum v. Fano, 427 U.S. 215, 226, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976)* (no right to remain in particular prison created by state law); *Wolff v. McDonnell, 418 U.S. 539, 557, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)* (right to good time credits created by state statute). Such matters are committed to the discretion of prison authorities. This grant of broad discretion to prison authorities comports with a principle rationale of *Sandin* that

> federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment.... Such flexibility is especially warranted in the fine-tuning of the ordinary incidents of prison life, a common subject of prisoner claims....

**\*6** 515 U.S. at ——— – ———, 115 S.Ct. at 2299–2300.

Here, plaintiff contends at best that his keeplock confinement was "atypical and significant" under *Sandin* because it subjected him to retaliation, caused closer monitoring by DOCS, affected his transfer to other institutions, and impaired his eligibility for certain prison programs. Pl. Mem. of Law at p. 21. These contentions are conclusory and unsupported in any way. They are also unsworn and unsigned. For these reasons alone, plaintiff's contentions should be rejected as failing to raise any issue of fact under *Sandin*.

On their merits as well, however, these contentions should be rejected. While there may be cases where confinement in keeplock might subject an inmate to retaliation from other inmates or guards such that keeplock confinement imposed "atypical and significant" hardships, no such hardship has been demonstrated here by the non-specific, conclusory assertions of plaintiff. As to the contentions regarding plaintiff's monitoring status and his eligibility for transfer and prison programs, all concern matters for which plaintiff has no special rights or interests, all were known to follow from disciplinary confinement as a regular part of DOCS' regime, and plaintiff has asserted no hardship atypical or significant as to him concerning these matters.

For these reasons plaintiff has failed to meet his burden of demonstrating the existence of any factual issue under

*Sandin*. Accordingly, defendants' motion on this ground should be granted.

2. Due Process

Defendants assert that, notwithstanding *Sandin,* plaintiff was not denied due process.

The Due Process Clause requires that an inmate faced with disciplinary confinement has a right to at least twenty-four hours advance notice of the charges against him and to be informed of the reasons for the action taken and the evidence relied upon by the hearing officer. In addition, an inmate has the right to call witnesses and present evidence in his defense "when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals." *Wolff v. McDonnell,* 418 U.S. 539, 564–66, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *McCann v. Coughlin,* 698 F.2d 112, 121–22 (2d Cir.1983). These rights implicitly include the right to make a statement in the inmate's defense and the right to marshal the facts. *See Hewitt v. Helms,* 459 U.S. 460, 472, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983); *see also Patterson v. Coughlin,* 761 F.2d 886, 890 (2d Cir.1985), *cert. denied,* 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986).

Where an inmate is illiterate or where the charges are unusually complex, the inmate is entitled to seek the assistance of another inmate or an employee. *Wolff v. McDonnell,* 418 U.S. at 570. The Second Circuit has extended this right, and directed that inmates who are confined pending a hearing be provided with some form of assistance. *Eng v. Coughlin,* 858 F.2d 889, 897–98 (2d Cir.1988). Corrections officials are required only to provide inmates with the opportunity to exercise these due process rights. *See, e.g., Maiid v. Henderson,* 533 F.Supp. 1257, 1273 (N.D.N.Y.), *aff'd,* 714 F.2d 115 (2d Cir.1982) ("although [the inmate] had the right to call witnesses at his hearing, there is no evidence in the record that he ever invoked this right").

**\*7** Here, plaintiff argues first that the hearing officer failed to call witnesses in the requested order. However, due process does not mandate that plaintiff be permitted to call his witnesses in a particular order.

Second, plaintiff alleges that the hearing officer failed to conduct an in camera inquiry into the original source of information on which the search was authorized to determine if that source was reliable. However, the issues

Case 9:17-cv-01007-DNH-DEP  Document 56  Filed 11/08/18  Page 59 of 64

Tinsley v. Greene, Not Reported in F.Supp. (1997)

1997 WL 160124

at the hearing were the results of the search, not the reasons why the search was initiated. The hearing officer's decision did not rest in any part on the information from the confidential informant. Due process thus did not require inquiry into the reliability of the original information.

Third, plaintiff contends that although the original misbehavior report contains the signatures of both defendant Yule and Officer Rando, his copy reflects only defendant Yule's signature. However, an inmate has no right to receive a statement of charges signed by any particular official. [6]

Fourth, plaintiff claims that defendant Roberts failed to provide him with various documents plaintiff requested pursuant to New York's Freedom of Information Law after the disciplinary hearing concluded. This claim as well falls outside the scope of the Due Process Clause as described by the cases discussed above. Defendants' failure to provide the requested documents did not violate plaintiff's constitutional right.

Accordingly, defendants' motion should be granted on this ground as well. [7]

3. Cell Search

Plaintiff alleges that the search of his cell on October 30, 1995 violated his Fourth Amendment protection against unreasonable searches and seizures. [8] In *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the Supreme Court held that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Id.* at 526. Searches of prison cells, even arbitrary searches, implicate no protected constitutional rights. *DeMaio v. Mann,* 877 F.Supp. 89, 95 (N.D.N.Y.1995) (Kaplan, J.). Plaintiff thus may assert no cause of action here based on an alleged violation of his Fourth Amendment rights. [9] Defendants' motion for summary judgment as to claims regarding the search of plaintiff's cell should be granted.

4. *Qualified Immunity*

Defendants argue in the alternative that they are entitled to summary judgment on the ground of qualified immunity.

A government official is entitled to qualified immunity if his or her conduct did not violate "a clearly established" constitutional right of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *see also Wright v. Smith,* 21 F.3d 496, 500 (2d Cir.1994). The contours of the right must be established to the extent that a reasonable official would recognize his acts violated that right. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

The following factors must be considered to determine whether a right is clearly established:

> **\*8** (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question, and (3) whether under pre-existing law a reasonable defendant official would have understood that his or her acts were unlawful.

*Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991), *cert. denied,* 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992). A determination in favor of a public officer based on qualified immunity is appropriate when, at the time the officer was acting, the right in question was not clearly established or, even if the right was established, it was not objectively reasonable for the official to recognize that his conduct violated the right. *Richardson v. Selsky,* 5 F.3d 616, 621 (2d Cir.1993); *Ying Jing Gan v. City of New York,* 996 F.2d 522 (2d Cir.1993).

Here, among other reasons, the defendants could not reasonably have known that the search of plaintiff's cell violated any of his Fourth Amendment rights or that plaintiff's due process rights were violated by the failure to call witnesses in the order requested by plaintiff. *Cf. Walker v. Bates,* 23 F.3d 652, 656–57 (2d Cir.1994), *cert. denied,* 515 U.S. 1157, 115 S.Ct. 2608, 132 L.Ed.2d 852 (1995) (prison disciplinary hearing officer entitled to qualified immunity in suit claiming violation of due process from denial of prisoner's right to call witnesses in disciplinary hearing); *Cookish v. Powell,* 945 F.2d 441, 449 (1st Cir.1991) (prison official entitled to qualified immunity from charge of violating prisoner's Fourth

Case 9:17-cv-01007-DNH-DEP   Document 56   Filed 11/08/18   Page 60 of 64

Tinsley v. Greene, Not Reported in F.Supp. (1997)

1997 WL 160124

Amendment rights by conducting body cavity search in view of prison guards of opposite sex). Therefore, the defendants' motion on this ground should be granted.

## III. APPOINTMENT OF COUNSEL

Also pending is a renewed application by plaintiff for appointment of counsel (Docket No. 21). A review of the file in this matter reveals that the issues in dispute in this case are not overly complex. Further, there has been no indication that plaintiff has been unable to investigate the critical facts of this case. Finally, no special reason appears why appointment of counsel at this time would be more likely to lead to a just determination of this litigation. Therefore, based upon the existing record in this case, appointment of counsel is unwarranted. [10]

## IV. CONCLUSION

WHEREFORE, for the reasons stated above, it is

RECOMMENDED that defendants' motion for summary judgment be GRANTED; and it is further

RECOMMENDED that plaintiff's motion for summary judgment by default be DENIED; and it is hereby

ORDERED that plaintiff's renewed motion for appointment of counsel is DENIED without prejudice; and it is further

ORDERED that plaintiff's motion for a pre-trial conference and an evidentiary hearing is DENIED; and it is further

ORDERED that the Clerk of the Court serve a copy of this Report–Recommendation and Order, by regular mail, upon the parties to this action.

**\*9** Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

### All Citations

Not Reported in F.Supp., 1997 WL 160124

## Footnotes

1    This matter was referred to the undersigned for report and recommendation by United States District Judge Rosemary S. Pooler pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

2    "Keeplock is a form of disciplinary confinement segregating an inmate from other inmates and depriving him of participation in normal prison activities." *Green v. Bauvi,* 46 F.3d 189, 192 (2d Cir.1995); N.Y. Comp.Codes R. & Regs. tit. 7, § 301.6 (1995).

3    DOCS regulations provide for three tiers of disciplinary hearings depending on the seriousness of the misconduct charged. A Tier III hearing, or superintendent's hearing, is required whenever disciplinary penalties exceeding thirty days may be imposed. N.Y. Comp.Codes R. & Regs. tit. 7, §§ 254.7(iii), 270.3(a) (1995); *Walker v. Bates,* 23 F.3d 652, 654 (2d Cir.1994), *cert. denied,* 515 U.S. 1157, 115 S.Ct. 2608, 132 L.Ed.2d 852 (1995).

4    New York regulations permit placement in keeplock for both disciplinary and administrative reasons. These include, among others, punishment for misconduct and protective custody. N.Y. Comp.Codes R. & Regs. tit. 7, § 301.1–.7 (1995).

5    Inmates confined for reasons of protection receive somewhat greater privileges. *See, e.g.,* N.Y. Comp.Codes R. & Regs. tit. 7, § 330.4 (1995) (three hours per day outside cell).

6    A misbehavior report is to be made by the employee who has observed the incident. Where another employee has personal knowledge of the facts, he shall, where appropriate, endorse his name on the other employee's report. N.Y. Comp.Codes R. & Regs. tit. 7, § 251–3.1(b) (1995). The misbehavior report here was signed by J. Rando and endorsed by G. Yules as an employee witness, and it is endorsed by the area supervisor. *See* Defs.' Statement Pursuant to Rule 7.1(f), Ex. A, p. 1, Inmate Misbehavior Report.

1997 WL 160124

7    Throughout his complaint and pleadings, plaintiff refers jointly to his right to due process/equal protection. The facts and arguments in plaintiff's complaint and pleadings point only to a due process claim. No facts or arguments relating to the Equal Protection Clause are asserted. Nevertheless, to the extent plaintiff's complaint is deemed to assert a claim for violation of the Equal Protection Clause, defendants' motion for summary judgment should be granted as to that claim as well.

8    In his complaint plaintiff also appears to allege that the search violated his Fourteenth Amendment right to due process because he received a receipt for the seizure of the marijuana five hours after the search was conducted and never received any report of the search. To the extent plaintiff asserts such a claim, summary judgment should be granted to the defendants for the reasons set forth in subsections 1 and 2 above.

9    Nor can an inmate recover under section 1983 for intentional destruction of his personal property by a state employee, as long as the state provides a meaningful post-deprivation remedy. *Hudson v. Palmer,* 468 U.S. at 533. New York provides such a remedy in section 9 of the New York Court of Claims Act. *Smith v. O'Connor,* 901 F.Supp. 644, 647 (S.D.N.Y.1995). Plaintiff may pursue any claim regarding destruction of his personal property in state court.

10    Also pending is plaintiff's motion for a pre-trial conference and evidentiary hearing (Docket No. 23). This motion is untimely and is hereby denied. Plaintiff has also moved for summary judgment by default (Docket No. 11) in response to defendants' request for an extension of time to answer the complaint. This extension was granted by order dated March 15, 1996 and defendants have answered. Accordingly, it is recommended that this motion be denied as moot.

---

**End of Document**                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 1056416
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Kody WEIDMAN, Plaintiff,
v.
Larry WILCOX, Defendant.

No. 6:12–CV–6524 (MAT).
|
Signed March 17, 2014.

**Attorneys and Law Firms**

Kody Weidman, New Berlin, NY, pro se.

**DECISION AND ORDER**

MICHAEL A. TELESCA, District Judge.

**I. Introduction**

 *1  *Pro se* plaintiff Kody Weidman ("Weidman" or "Plaintiff"), an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), instituted this action pursuant to 42 U.S.C. § 1983, alleging that he was denied adequate medical treatment in violation of his rights under the Eighth Amendment. Defendant has moved to dismiss the complaint on the basis that Weidman has failed to exhaust his administrative remedies.

**II. Background**

Plaintiff has alleged the following facts, which the Court accepts as true for purposes of this motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b) (6)"). *E. g., Jaghory v. New York State Dep't of Educ.,* 131 F.3d 326, 329 (2d Cir.1997) (citations omitted). On September 3, 2012, Plaintiff was bitten on his left cheek by a spider. He reported it and was sent to sick call. However, the head nurse refused to treat him, and as a result, his left cheek "swell[ed] up and start[ed] to pus", and became painful. Dkt # 1, p. 3 of 4. Plaintiff contacted "D.I. Delmani", who in turn contacted "the sgt", who took him to the hospital at Lakeview on September 6, 2012. *Id.* There, Plaintiff was seen by a doctor who gave him "sulfamethox" and applied a heat pack to his face. The "pus and swelling then went down." *Id.*

Plaintiff did not file a grievance but instead proceeded directly to this Court, filing his complaint on September 14, 2012. Defendants filed a motion to dismiss on March 18, 2013. The complaint was dismissed for failure to prosecute on June 19, 2013, but was reinstated on June 25, 2013. The matter was transferred to the undersigned on February 20, 2014. For the reasons set forth below, the motion to dismiss is granted, and the complaint is dismissed in its entirety with prejudice.

**III. Defendant's Motion to Dismiss**

Defendant asserts that it is clear from the face of Plaintiff's complaint that he has failed to exhaust his administrative remedies by filing a prison grievance, and therefore his complaint warrants dismissal pursuant to Rule 12(b)(6). In response to Defendant's non-exhaustion argument, Plaintiff simply restates the basis for his grievance as his reason for not exhausting his administrative remedies.

**A. Administrative Exhaustion**

The Prison Litigation Reform Act of 1995 (the "PLRA"), Pub.L. No. 104–134, 110 Stat. 1321 (1996), requires an inmate to exhaust all available administrative remedies before filing suit in federal court. Specifically, Section 1997e(a) of Title 42 U.S.C. provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has ruled that the exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong[,]" *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002).

 *2  It is well established that exhaustion requires that "a prisoner must grieve his complaint about prison conditions up through the highest level of administrative review" before filing suit. *Porter v. Goord,* No. 01 Civ. 8996(NRB), 2002 WL 1402000, at *1 (S.D.N.Y. June 28, 2002) (citing *Neal v. Goord,* 267 F.3d 116, 122 (2d Cir.2001) ("[G]rievances must now be fully pursued prior to filing a complaint in federal court."); other citation

omitted)); *see also Booth v. Churner,* 532 U.S. 731, 735, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001) (noting that inmate, who conceded nonexhuastion below, "did not, however, go beyond the first step, and never sought intermediate or final administrative review after the prison authority denied relief"); *Gibson v. Goord,* 280 F.3d 221, 223 (2d Cir.2002) (noting plaintiff "had not pursued the available remedy of filing a 'level two grievance' "). "Complete exhaustion" is therefore required. *Graham v. Cochran,* No. 96 Civ. 6166(LTS)(RLE), 2002 WL 31132874, at *1, 6 (S.D.N.Y.2002) (noting "action must be dismissed because [plaintiff] unreasonably failed to appeal"); *see also McCoy v. Goord,* 255 F.Supp.2d 233, 251 (S.D.N.Y.2003) ("The standard is not one of fair notice to the defendants, or of substantial compliance.").

Prisoners in DOCCS custody must complete a three-step inmate grievance procedure, including two levels of appeals, to exhaust their administrative remedies. *See, e.g., Baskerville v. Blot,* 224 F.Supp.2d 723, 729 (S.D.N.Y.2002); N.Y. CORR. LAWW § 139; N .Y. COMP.CODES R. & REGS. tit. 7, § 701.7. The DOCCS grievance procedure is available for any number of complaints, as New York State law "permits inmates to file internal grievances as to virtually any issue affecting their confinement." *Flanagan v. Maly,* No. 99 Civ. 12336(GEL), 2002 WL 122921, at *1 (S.D.N.Y. Jan.29, 2002) (citations omitted).

Although the Second Circuit has not explicitly ruled on the issue of whether exhaustion is jurisdictional, it has held indirectly that it is not. *See Jenkins v. Haubert,* 179 F.3d 19, 28–29 (2d Cir.1999) (failure to exhaust is an affirmative defense); *Snider v. Melindez,* 199 F.3d 108, 112 (2d Cir.1999) (exhaustion need not be pled in the complaint); *Davis v. New York,* 316 F.3d 93, 101 (2d Cir.2002) (non-exhaustion may be waived)). Thus, most courts in this Circuit have found that Rule 12(b)(6), rather than Rule 12(b) (1), is the proper vehicle for a defendant to use to seek dismissal of a § 1983 complaint, provided that nonexhaustion is apparent on the face of the complaint. *McCoy,* 255 F.Supp.2d at 249 (citing *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 74–75 (2d Cir.1998) ("An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint."); other citation omitted). If, on the other hand, "nonexhaustion is not clear from the face of the complaint, a defendant's motion

to dismiss should be converted, pursuant to Rule 12(b), to one for summary judgment limited to the narrow issue of exhaustion and the relatively straightforward questions about the plaintiff's efforts to exhaust, whether remedies were available, or whether exhaustion might be, in very limited circumstances, excused." *McCoy,* 255 F.Supp.2d at 251 (citation omitted).

**B. Analysis**

**\*3** Plaintiff's complaint, broadly construed, asserts entitlement to damages under 42 U.S.C. § 1983 for negligent medical care and deliberate indifference to a serious medical need. Because Plaintiff has not alleged that he was singled out for such treatment, his action is one brought with respect to prison conditions, and he must exhaust his administrative remedies. *Polanco v. City of N.Y. Dep't of Corr.,* No. 01 Civ. 759(AGS), 2002 WL 272401, at *2 (S.D.N.Y. Feb.26, 2002) (citing *Neal v. Goord,* 267 F.3d at 119–21 (claims of inadequate medical treatment generally relate to prison conditions)). Here, Plaintiff admitted in his complaint that there was a prison grievance procedure available to him, but he did not use it. Dkt # 1, p. 2 of 4. When asked on the form complaint why he did not file a grievance, his response reads in full as follows: "I Kody Weidman when [sic] to sick call about the spider bite on my face and they refuse to attend me." *Id.*

In certain situations, an inmate may be exempted from the exhaustion requirement. If the inmate argues that he is exempt, the court must undertake a three-part inquiry, which entails asking (1) whether administrative remedies were not in fact available; (2) whether the defendants' actions inhibited exhaustion so as to estop them from asserting non-exhaustion as an affirmative defense; or (3) whether "special circumstances" exist (e.g., an inmate reasonably misunderstood the requirements of the grievance procedures). *Hemphill v. City of New York,* 380 F.3d 680, 686 (2d Cir.2004).

Plaintiff has not specifically argued that he is exempt from grieving for any of the reasons recognized in *Hemphill.* He does not claim that the grievance process was "unavailable" to him. Plaintiff does not identify any "special circumstances" that might justify his failure to exhaust his administrative remedies. He does not specifically claim that Defendants took any steps to inhibit him from taking advantage of the grievance process. He simply restates the gravamen of his complaint (i.e., he went to sick call and did not receive treatment for his spider bite)

as his reason for not pursuing a prison grievance through the proper channels. This is plainly insufficient.

In short, because Plaintiff has failed to identify any legally cognizable reason why he could not exhaust his administrative remedies, and because he affirmatively admits that he did not exhaust them, the Court must grant Defendants' motion to dismiss his complaint. *See, e.g., Lewis v. City of N.Y.,* No. 12 CV 5850(CM), 2013 WL 3833001, at *4 (S.D.N.Y. July 23, 2013) (granting defendant's motion to dismiss where plaintiff-inmate failed to offer any excuse for failure to follow through on the grievance he filed; did not claim that grievance process was "unavailable" to him; did not identify any "special circumstances" to justify his failure to exhaust his administrative remedies; and did not specifically claim that prison officials interfered with his ability to use the grievance process).

### C. Whether Dismissal Is With or Without Prejudice

**\*4** When a prisoner fails to exhaust available administrative remedies, and the time permitted for pursuing such remedies has not expired, the complaint is ordinarily dismissed without prejudice, thereby allowing the prisoner to submit a grievance to the particular institution at which the incident in question occurred. *Snider v. Melindez,* 199 F.3d at 111–12; *see also Morales v. Mackalm,* 278 F.3d 126, 128, 131 (2d Cir.2002) (*per curiam*) (broadly stating in *dictum* that any dismissal for failure to exhaust administrative remedies should be without prejudice), *abrogated* on *other grounds, Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). In *Berry v. Kerik,* 366 F.3d 85 (2d Cir.2004), however, the Second Circuit explained that this "broad [ ] *dictum*" in *Morales* "would extend too far if applied to cases where exhaustion was required but administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust." 366 F.3d at 88.

Here, because Plaintiff was released from prison during the pendency of this action, administrative remedies are no longer available to him. *Finger v. Superintendent McFinnis,* 99CIV.9870(LTS)(THK), 2004 WL 1367506, \*5 (S.D.N.Y. June 16, 2004) (citing *Morris v. Eversley,*

205 F.Supp.2d 234, 241 n. 4 (S.D.N.Y.2002) (citing *Liner v. Goord,* 115 F.Supp.2d 432, 434 (S.D.N.Y.2000)) (concluding that administrative remedies were no longer available to plaintiff who had been released from prison because inmate grievance procedures, on their face, are available only to inmates and visitors, and not to former prisoners)). Since the incident of which Plaintiff complains occurred in early September 2012, and he was not released to parole supervision until March 2013, he had ample opportunity to exhaust his administrative remedies while they were still available to him as a DOCCS prisoner. *See Berry,* 366 F.3d at 88 (former inmate who had been in DOCCS custody had "ample opportunity" to use administrative remedies where he had been incarcerated for several months after the onset of the conditions that gave rise to his complaints and before his release, and then had been incarcerated for periods of nine months and three months on unrelated offenses). As discussed above, Plaintiff has offered no legally cognizable reason for his failure to exhaust, simply stating, in effect, that he failed to file a grievance because he suffered a grievable injury. Hence, the Court finds that Plaintiff's complaint should be dismissed with prejudice. *See id.* (dismissing with prejudice inmate's action for failure to exhaust, where exhaustion was required but administrative remedies had become unavailable after prisoner had ample opportunity to use them, and no special circumstances justified failure to exhaust).

### IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss (Dkt # 10) is granted, and Plaintiff's complaint (Dkt # 1) is dismissed in its entirety with prejudice. The Court hereby certifies that any appeal of this order would not be taken in good faith, and therefore it denies leave to appeal in *forma pauperis.* Any further request for in *forma pauperis* status must be made on motion to the United States Court of Appeals for the Second Circuit. The Clerk of the Court is requested to close this case.

**\*5   IT IS SO ORDERED.**

### All Citations

Not Reported in F.Supp.3d, 2014 WL 1056416

---

© 2018 Thomson Reuters. No claim to original U.S. Government Works.